ROBERT WHITE *et al.*

*v.*

JOHN W. SUTHERLAND.

| 64 | 181 |
|---|---|
| 38a | 335 |
| 64 | 181 |
| 67a | 76 |
| 64 | 181 |
| 88a | 14 |
| 64 | 181 |
| 186 | ²329 |
| 64 | 181 |
| 197 | ⁴493 |
| 197 | ⁶495 |
| 197 | ⁷495 |
| 197 | ⁷496 |

1. ASSIGNMENT *of notes and mortgage.* Promissory notes are assignable by the statute, but a mortgage is not assignable, either by statute or by the common law. So, while the assignment of notes secured by mortgage carries the mortgage with them, that is true in equity, and only in equity.

2. ASSIGNMENT OF MORTGAGE—*subject to what defenses.* Where the assignee of a promissory note secured by mortgage seeks to foreclose the mortgage in equity, that court will let in any defense which would have been availing against the mortgage in the hands of the mortgagee himself—and this, regardless of the fact that the assignee may have purchased the note in good faith, for a valuable consideration, and before its maturity. The rule in *Olds* v. *Cummings,* 31 Ill. 188, on that subject, re-affirmed.

3. FRAUDULENT REPRESENTATIONS—*as distinguished from mere expressions of opinion.* A party desiring to purchase a farm, and being in such a crippled condition that he could not himself go to examine one he heard

was for sale, dispatched several members of his family for that purpose, who, after seeing the farm, reported favorably. Not satisfied with their opinions, the party wishing to purchase sent for the owner to visit him, with the view to learn all the facts from him. The two had been soldiers in the late war of the rebellion, and the owner of the farm was a minister of the gospel, and the one proposing to purchase appealed to him "as a christian, a gentleman and a soldier," to tell him the truth, telling him he should rely wholly on his representations in making the trade. The owner, assuring the other party he would not deceive him, thereupon made false statements as to the selling price of land in that locality; false statements as to the condition and quality of the fences on his farm, and as to the quantity of rails upon the ground, and as to the sufficiency of timber on the land to fence the whole tract, and knew these statements were false when he made them. The sale was consummated on the faith of the statements so made: *Held*, the statements were not mere expressions of opinion on the part of the vendor, but were fraudulent representations, of which the purchaser could avail in a proper proceeding, in his defense.

4. MATTERS OF OPINION—*whether relieved against in equity.* But if the statements made under such circumstances were mere matter of opinion, equity would relieve against them as a contrivance of fraud in cases of familiar relation or confidence, or where the other party had justly reposed upon and had been misled by it, or where a party knowingly placed confidence in another and acted upon his opinion, believing it to be honestly expressed.

5. FRAUDULENT SALE—*rights and remedies of the purchaser.* In all cases of fraud upon the part of the vendor, the vendee, who alone has the right to claim a rescission, may remain silent and bring his action to recover damages for the fraud, or may rely on it by way of defense to the action of the vendor, although there has been full acceptance of the property with knowledge of its defects. An affirmance of the contract by the vendee with such knowledge, merely extinguishes his right to rescind the sale. His other remedies remain unimpaired.

6. So, where a purchaser of land relied upon the fraudulent representations of the vendor in making the purchase, making a partial payment of the purchase money, but after he discovered the fraud, executed his notes for the balance and a mortgage on the premises to secure the same, it was *held*, that while such acquiescence or affirmance of the contract on the part of the purchaser might operate to deprive him of the right to rescind for the fraud, yet, upon bill to foreclose the mortgage, he had the clear right to recoup the damages occasioned thereby.

7. Nor was it essential to such right of recoupment that he should have asserted it before paying any of the notes. He might then have resisted the payment, but was not obliged to do so. He might delay until proceedings were commenced to foreclose, and then present his claim for damages.

APPEAL from the Circuit Court of Bond county; the Hon. JOSEPH GILLESPIE, Judge, presiding.

Mr. P. E. BLAND, and Messrs. S. A. & A. C. PHELPS, for the appellants.

Mr. WILLIAM H. UNDERWOOD and Mr. A. H. WHITE, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in equity in the Bond circuit court, exhibited by John W. Sutherland against Robert White and others, to foreclose a mortgage.

The complainant claimed he was the equitable assignee of the mortgage by assignment of the notes it was given to secure, before their maturity.

The consideration of the notes, it appears, was the sale and conveyance by the Reverend Samuel D. Lougheed of a farm of three hundred and fifty-six acres, situate in Bond county, to appellant.

The defense was, that the land was purchased by appellant on the faith of representations made by Lougheed as to material facts, he making them with full knowledge that appellant relied on them, and made for the purpose of inducing the purchase; that the purchase would not have been made but for such representations; and that the representations were wilfully false and fraudulent; and that by reason of such false and fraudulent representations, the land was sold to appellant at a price one hundred per cent in excess of its actual market value.

Much testimony was taken on the several questions raised, appellant and Lougheed being witnesses in their own behalf, and a decree passed in favor of complainant.

To reverse this decree the defendants appeal.

We have examined the testimony with great care, and find the material parts of the answer sustained by it. There is

some conflict, it is true, but we are of opinion the evidence greatly preponderates in appellant's favor, and establishes the defense set up. Counsel for appellee seem to have argued the case as if it was an attempt by appellant to rescind the contract. Some of the authorities cited by him bear on such a case, but no rescission is sought, but a recoupment, merely, in the way of damages, by reason of the alleged fraudulent representations.

The prominent facts seem to be, that appellant, who had been made a cripple for life, by reason of a wound received in one of the battles of the rebellion, possessed of moderate means, but having a comfortable home in St. Louis, which was his principal possession, desired to procure a farm in this State on which to reside, and hearing, through the Reverend Mr. Lougheed, of his farm, of which Mr. Lougheed had given a very favorable description, appellant dispatched his wife, his brother-in-law, Thomas H. White, and an inmate of his family, Mrs. Mary Hammond, to the residence of Mr. Lougheed, to see the farm and neighborhood. They remained at the farm two or three days, partially examining it, and on their return made a favorable report to appellant. Appellant, not being satisfied with their report, invited Mr. Lougheed to visit him at St. Louis, which he did. The interview took place the latter part of September, 1866, at the residence of appellant. Appellant was then confined to his bed, not being able to walk without assistance. Appellant called Lougheed's attention to his condition; that he could not go about like other people, and was obliged to depend, in most matters, on the representations of others. As a necessity for his proceeding judiciously in the purchase of a farm, appellant said to Lougheed that he had a helpless family dependent on him, and his means were all in the property on which he was then living, in St. Louis, and that any change he might make was of vital importance to him; that his physical condition was such that a false step would be ruinous to him.

Appellant then said that neither his wife nor his brother-in-law (Thomas H. White,) knew anything about farming or farming lands; that he could not, therefore, depend upon them, but should rely fully upon Lougheed's representations. Appellant then said to Mr. Lougheed, " I have a few questions to ask which I wish you to answer upon your honor as a christian, a gentleman, and a soldier." Mr. Lougheed replied, " Certainly, Colonel; rather than mislead you, in the least particular, I would lose my right arm." Lougheed said something about his being " a brother soldier." The price demanded for the land was twenty dollars per acre. Appellant then asked him if the price asked was as low as similar land of the same quality could be bought for in that neighborhood. Lougheed said it was, and that he had had two offers for the land at that price; but, said he, " Colonel, I would like for you to have it, and will give you the preference." Lougheed then stated there were forty acres under a good fence sufficient to turn stock, and rails enough on the ground to fence nearly another forty acres; and timber enough on the land to fence the whole tract.

Appellant, relying on these representations, concluded the bargain for the land at twenty dollars per acre. Lougheed then went home, and the next day returned to St. Louis with a deed for the land, a blank being left for the names of the grantees. In the meantime, appellant sold his place in St. Louis, and out of the payment thereon paid Lougheed three thousand dollars, and commenced packing his goods preparatory to his removal to the farm, which he effected the next day.

Three or four weeks after appellant's removal to the farm, the mortgage in question, and the notes for the balance of the purchase money, were executed, the original deed made by Lougheed and wife having been given up, and separate deeds to appellant and Thomas H. White executed for equal portions of the land.

This suit is on the mortgage executed by appellant. There is another suit pending on the mortgage executed by Thomas H. White depending on the same facts, and as the two suits have been submitted together, we have considered them as one and the same.

The first question to be determined is, do the facts present an equity in favor of appellant of which. he can avail in this suit, complainant claiming to be a *bona fide* assignee of the notes for a valuable consideration paid before their maturity, and without notice of any of the facts relied on in defense ?

It is not denied that appellee occupies the same position as the vendor, Lougheed. This being so, appellants can set up the same equities against him that they could set up against Lougheed, if he was complainant. This is settled by the case of *Olds* v. *Cummings et al.* 31 Ill. 188. The mortgage in question, like that in the case cited, was given to secure the payment of certain promissory notes which were assigned by the payee and mortgagee to the complainant. This, in equity, was an assignment of the mortgage. The notes were assignable by the statute, but the mortgage was not, nor was it assignable by the common law. Though the assignment of the notes carries the mortgage with them, that is true in equity, and only in equity. By the assignment of the notes, the assignee obtained an equitable interest in the mortgage, which courts of equity, under certain circumstances, will enforce, if it can be done without a violation of the equitable rights of others. He who buys that which is not assignable at law, relying upon a court of chancery to protect and enforce his rights, takes it subject to all infirmities to which it is liable in the hands of the assignor; and the reason is, that equity will not lend itself to deprive a party of a right which the law has secured him if such right is intrinsically just of itself.

Was Lougheed seeking a foreclosure, could the facts here disclosed be used against him to prevent a recovery ?

Appellee's counsel claim that the misrepresentations complained of were merely expressions of opinion on which it

was the folly of appellant to rely—he should have examined for himself, and authorities are cited in support of this proposition which we are not disposed to question. But were they mere expressions of opinion? for this is the turning point of the case. Was it the expression of an opinion merely, that twenty dollars per acre was the selling price of similar land in that locality? The proof is overwhelming that it did not exceed ten dollars per acre. Was it mere opinion the fence around forty acres was a good fence, sufficient to turn stock? Was it mere opinion there were rails enough on the ground to fence another forty? Was it mere opinion there was timber enough on the land to fence the entire tract? No; these were not expressions of opinion, but deliberate statements of facts, made by a minister of the gospel, on an appeal to him by a cripple deprived of the power of locomotion, to state to to him the truth, as a christian, a gentleman and a soldier, being forewarned that he should rely wholly on his representations in making the trade. Thus solemnly and earnestly appealed to, and by a man who was incapacitated from making a personal examination, and who did not rely on the representations of those members of his family he had sent to examine the farm, the vendor, to insure the purchase, made statements which he knew to be false as to the selling price of land in this locality—false statements as to the condition and quality of the fences; false statements as to the quantity of rails on the ground; false statements as to the sufficiency of timber on the land to fence the whole tract, all which are proved to be false, and which the vendor made for the sole purpose of inducing a man who relied on his honesty as a minister of the gospel, a gentleman and a soldier, to agree to pay a large sum for the property over and above its real value, and which appellant would not have done, but for these representations. They were false statements, known to be so by the party making them, and made to induce an act which would not have been done in the absence of such statements.

But it is said by appellee there was such acquiescence by appellant after the discovery of the fraud as to preclude him from relief in equity. Reference is made to Kerr on Injunctions, and to *Veazy* v. *Williams et al.* 3 Story C. C. R. 630. Kerr says, in order to justify the application of the principle of acquiescence, it is indisputable that the party against whom encouragement or acquiescence is alleged, should be fully apprised of his rights, and should, by his conduct, encourage the other party to alter his condition, and that the latter should act on the faith of the encouragement so held out. p. 42, 202. At page 349, in treating of nuisances, the author says, if the question as to a nuisance is one which admits of a determination prospectively, a man should not delay in coming to the court. If he abstains from coming until the mischief is actually done, he may be told he is too late. It is, we think, quite apparent that the principle here invoked has no application to this case. The case in Story was a bill in equity to rescind a contract for the sale of certain mill privileges, where it was held that lapse of time was a sufficient bar to the bill to rescind the sale on the ground of fraud, when the plaintiff might have acquainted himself at the time of the sale with the facts, and especially if the circumstances be greatly changed, and the evidence be lost or obscured. In this case five years had elapsed.

Appellant does not seek a rescission of the contract, and therefore the principle of the case cited does not apply. This case depends on other principles, acknowledged by all courts of equity.

One of the largest classes of cases in which courts of equity are accustomed to grant relief, is where there has been a misrepresentation or *suggestio falsi.* It is indeed a very old head of equity that if a representation is made to another person going to deal in a matter of interest upon the faith of that representation, the former shall make that representation good if he knows it to be false. The misrepresentation must be in a matter of substance, or important to the interests of the other

p irty, and that it actually does mislead him. If the misrepresentation is of a trifling or immaterial thing, or if the other party did not trust to it, or was not misled by it, or if it was vague and inconclusive in its own nature, or if it was upon a matter of opinion or fact equally open to the inquiries of both parties, and in regard to which neither could be presumed to trust the other, in such cases there is no ground for the interference of a court of equity to grant relief upon the ground of fraud.   1 Story's Eq. Jur. sec. 191.

It is said in the next succeeding section, where the party intentionally or by design misrepresents a material fact, or produces a false impression, in order to mislead another, or to entrap or cheat him, or to obtain an undue advantage of him, in every such case there is a positive fraud in the truest sense of the term.   There is an evil act with an evil intent. Sec. 192.

Again, it is said the misrepresentation must not only be in something material, but it must be in something in regard to which the one party places a known trust and confidence in the other.   Sec. 197.

Testing this case by these principles, it will be found to be embraced within them.   Appellant, from his physical prostration, as he told Lougheed, could not go about and examine for himself as others could; that he placed no reliance on the opinions of those members of his family who had visited the farm, and invoked, in the most appealing manner, Lougheed to tell him the whole truth about the property, assuring him that he should rely entirely upon his representation, conjuring him as a christian, a gentleman and a soldier, to give him the facts.   Appellant trusted in Lougheed as a minister of the gospel, who could not lie and would not deceive, and regarded his declarations with that confiding faith all christians, from their infancy, are taught to repose in one of his holy calling. As a christian minister, he stood in the relation of a trust and confidence toward appellant, who was ready and willing to believe everything that fell from his lips, not dreaming

they could give utterance to lies, or that he could harbor in his bosom a desire to entrap and cheat him. Appellant told Lougheed his means were limited—chiefly in his St. Louis property—and it behooved him to move cautiously in changing his condition, as a false step might ruin him financially. In his palsied, helpless condition, he appealed to all the better instincts of our nature to one he did not believe could practice to deceive, who, taking advantage of his condition, extorted from him a contract stamped with fraud and falsehood.

But if the statements made by Lougheed were mere matter of opinion, equity will relieve against them as a contrivance of fraud in cases of familiar relation or confidence, or where the other party has justly reposed upon it and has been misled by it, or where a party knowingly places confidence in another and acts upon his opinion, believing it to be honestly expressed. 1 Story's Eq. Jur. secs. 197, 198.

It is also said, in the following section, that a seller is unquestionably liable to an action of deceit if he fraudulently represent the quality of the thing sold to be other than it is, in some particulars which the buyer has not equal means with himself of knowing; or if he do so in such a manner as to induce the buyer to forbear making the inquiries which, for his own security and advantage, he would otherwise have made. Sec. 199.

What greater inducement to a purchaser to forbear making such inquiries could be presented than the solemn declarations of a minister of the gospel that certain facts existed in regard to the property to be purchased?

That appellant purchased this land upon the faith of the truth of the representations of Lougheed, and upon them alone, there can not be a particle of doubt. If so, then upon the settled principles of courts of equity, the bargain might be set aside, as founded upon gross misrepresentation, going to its very essence. As was said in *Doggett* v. *Emerson et al.*

3 Story, C. C. R. 700, the whole doctrine turns upon this, that he who misleads the confidence of another person by false statements in the substance of a purchase, shall be the sufferer, and not his victim. To the same effect is *Daniel* v. *Mitchell,* 1 Story, R. 172; *Hough* v. *Richardson,* 3 Story, 659.

Here, it is true, there is no attempt to rescind the contract, and the question remains to be considered, if a party does not elect to rescind, can he recoup the damages arising out of the fraud, in this proceeding?

We are of opinion, in all cases of fraud, the vendee, who alone has the right to claim a rescission, may remain silent and bring his action to recover damages for the fraud, or may rely on it by way of defense to the action of the vendor, although there has been full acceptance by him of the property with knowledge of its defects; and this, we understand, is the doctrine of well adjudged cases. In *Whitney* v. *Allaire,* 4 Denio, 554, it was held that a party who had been drawn into executing a contract by fraudulent representations may affirm the contract after the discovery of the fraud, and, notwithstanding such affirmance, may bring his action for the fraud, or may recoup the damages sustained on account of it, in an action, if brought by the other party on the agreement. An affirmance of the contract by the vendee with such knowledge merely extinguishes his right to rescind the sale. His other remedies remain unimpaired. The vendor can never complain that the vendee has not rescinded. Fraud and damage have ever been regarded as a solid foundation for an action. *Pasley* v. *Freeman,* 3 Term R. 51.

It was further said, a party defrauded in a contract has his choice of remedies. He may stand to the bargain even after he has discovered the fraud, and recover damages on account of it, or he may rescind the contract and recover back what he paid or sold. 2 Kent's Com. 11th Ed. 638, note c; *Campbell* v. *Fleming,* 1 Ad. 40; *Smith* v. *Doty,* 24 Ill. 163.

It is further said, there is no principle or authority showing that where a person has been defrauded by another in making an executory contract, a subsequent performance of it on his part, even with knowledge of the fraud acquired subsequent to the making and previous to the performance, bars him of any remedy for his damages for the fraud. The party defrauded, by performing his part of the contract with a knowledge of the fraud, is deemed to have ratified it, and is precluded thereby from subsequently disaffirming it, and this is the extent of the rule. His right of action for the fraud remains unaffected by such performance.

The same principle is recognized in *Gordon et al.* v. *Conger,* 4 Blackf. 231.

It is very clear if the mortgage interest still remained in Lougheed, or the notes, and he had brought his action on the notes, the facts would establish a plain case for recoupment. A court of equity having possession of the case, has full power to adjust all the equities between the parties, and do complete justice between them. As was said in *Schuchman* v. *Knoeble, Exr.* 27 Ill. 175, there is a natural equity as to claims arising out of the same transaction; that one claim should compensate the other.

It is urged by appellee that the proper time for appellant to make his claim has passed; that he should have done it certainly before he paid any of the notes. Appellant might then have resisted the payment, but he was not obliged to do it. He might, under the authority of the cases cited, delay until proceedings were commenced to foreclose, and then present his claim for damages. This he has done, and every principle of equity and justice is at his side to aid him. Appellant was in an embarrassing position; he had deprived himself of his home in St. Louis to obtain this farm, and was bound to affirm the contract, as the bulk of his fortune was embarked in the purchase. He could do nothing else but remain silent until he was proceeded against, and then assert his rights.

We think it a clear case for appellant, and reverse the decree of the circuit court and remand the cause, with directions to the circuit court to hear proof of the extent of appellant's damage by reason of the fraud of Lougheed.

The decree is reversed and the cause remanded.*

*Decree reversed.*

---

*WHITE *v.* SUTHERLAND.

Mr. JUSTICE BREESE: This case is the same, in all important particulars, as the preceding, and is decided in the same way. The decree is reversed and the cause remanded.

*Decree reversed.*