SAMUEL GROENENDYKE *et al.*

*v.*

HELEN M. COFFEEN *et al.*

*Filed at Springfield March 26, 1884.*

1. CHANCERY—*master's report—of its sufficiency as to the subject matter of the finding.* On bill by the heirs of a deceased partner against the survivor, for an account, and partition of lands held in trust by the survivor, a finding by the master in chancery, to whom the cause was referred to report his conclusions both of law and fact, that the real estate of the firm was divided on a certain day, is equivalent to a finding that *all* the lands of the firm were divided, and that none others were held in trust for the late firm.

2. SAME—*as to the basis of the master's report—whether it sufficiently appears.* Where a master's report of a partnership account did not state how he made up his statement of the account so as to arrive at the balance due, but showed that two expert accountants had made a very careful exam-

ination of the books, and that the conclusion they reached differed widely from his own, and the court sustained an exception to his report, it was *held*, no error in sustaining the exception, as the record failed to show that the calculation of the accountants was on an erroneous basis, or whether the court heard other evidence, or did not examine the books.

3. SAME—*finding the facts in the decree—presumption—and what is matter of record.* In a chancery case it will be presumed that the finding of the facts by the court, recited in the decree, were warranted, unless the testimony found in the record shows to the contrary. A party dissatisfied with the finding of facts upon which the decree is based, must bring the testimony before this court that will show that such facts were erroneously found, otherwise it will be presumed the findings were warranted.

4. All depositions on file in a chancery case, and the master's report of evidence, become a part of the record without any certificate of the court. But when the court, in its decree, finds the facts, from the evidence and the depositions and master's report, and the evidence found in the record does not sustain the finding, it will be presumed other evidence was heard, where there is no certificate of either the master or the court that the record contains all the evidence.

5. SAME—*books of account—how to be preserved in the record.* It being impracticable to make the books of accounts of a firm a part of the record, so that this court may consider them, only abstracts of their contents should properly be incorporated in a certificate of evidence. When the account embraces many items running for many years, it seems the court may hear the evidence of expert accountants, and receive abstracts made by them from a careful examination of the books, in stating an account.

6. SETTLEMENT—*of partnership accounts—what will amount to a settlement.* It is not absolutely necessary that a balance should be struck of partnership accounts before a final settlement can be made by the parties in interest. A satisfactory conclusion on which to base a final settlement may be reached otherwise, and if such a settlement is had, there being no fraud, concealment or overreaching, in which the parties acquiesce for many years, it may be regarded as final, and a bar to a bill for an accounting.

7. A partnership was dissolved in 1859, and one of the partners died in April, 1860, and afterward, in December, 1869, the heirs of the deceased partner, then all of age, had a settlement with the survivor, of all the partnership assets and effects, fairly made, without any fraudulent concealment, and a partition was made of the lands belonging to the firm, the heirs taking possession of their share, which settlement was acquiesced in by the heirs without any expression of dissatisfaction, until in 1875, when some of them thought they had been overreached, whereupon it was agreed the books should be submitted to two accountants, mutually selected for their skill in such matters, who, after much labor and time spent, reached a conclusion showing the settlement in 1869 was not far from right, but not being satis-

factory to the heirs, they filed a bill for an account in February, 1876:
*Held,* that these facts justified a decree finding a final settlement of the part-
nership matters had been made in 1869, and dismissing the bill.

8.  STALE CLAIM—*in equity.* A mercantile partnership was formed be-
tween A and B in 1841, which was continued actively until 1859, when their
stock of merchandise was sold, and by mutual consent their business as gen-
eral partners ceased. On April 19, 1860, A died, leaving heirs, the youngest
of whom became of age in 1864. On February 24, 1876, the heirs of A filed a
bill against B, the surviving partner, for a settlement and statement of the
partnership accounts, to which an answer was filed setting up the five years'
Statute of Limitations, and also *laches: Held,* that aside from the Statute
of Limitations, a court of equity would treat the relief sought as barred, from
the staleness of the demand.

WRIT OF ERROR to the Circuit Court of Champaign county;
the Hon. C. B. SMITH, Judge, presiding.

Mr. J. O. CUNNINGHAM, for the plaintiffs in error:

There was no final settlement of the partnership accounts
or profits. No balance was ever struck. The master who
stated the account found there was due to the complainants
$9832.72, without allowing any interest for the eighteen years
Coffeen used the firm money. By all rules governing accounts
between partners, interest should have been counted upon the
balance from a reasonable period from April 20, 1860. *Derby*
v. *Gage et al.* 38 Ill. 27; *Scroggs* v. *Cunningham,* 81 id. 110.

The only statute of limitations set up in the answer is the
five years' statute, which applies only to personal actions, and
not to actions for the recovery of real estate. The limitation
as to real actions not being pleaded, can not be availed of.
*Borders* v. *Murphy,* 78 Ill. 81.

This being an action to declare a resulting trust in favor
of complainants, no time short of twenty years would prove
a bar. *Ryder et al.* v. *Emrich et al.* 104 Ill. 470.

Mr. FRANCIS M. WRIGHT, for the defendants in error:

Where no bill of exceptions or certificate of evidence is
found in the record, the propriety of the decree must be de-

termined from the allegations of the bill and facts found by the court, as stated in the decree, as it must be presumed the evidence was sufficient to sustain such findings.   *Binkert* v. *Wabash Ry. Co.* 98 Ill. 205.

It was the duty of the defendants (complainants here) to preserve the whole evidence in the record if they desired to question its sufficiency to sustain the decree of the court. *Morgan et al.* v. *Corlies*, 81 Ill. 72 ;   *Thomas* v. *Adams*, 59 id. 223.

A party not satisfied with a decree finding the facts, can insist upon a certificate of evidence or bill of exceptions. *Walker* v. *Abt*, 83 Ill. 226 ;   *Walker* v. *Carey*, 53 id. 470.

Where the court in its decree finds certain facts, and the certificate of evidence does not purport to contain all the evidence, it will be presumed that the court heard proof sufficient to justify the finding, though it does not appear in the record.   *Corbus* v. *Teed*, 69 Ill. 205.

A bill for an account, by one partner against another, is barred after the lapse of five years after the dissolution of the partnership.   *Pierce* v. *McClellan*, 93 Ill. 245.

Besides, the claim is stale, and will not be enforced in equity.   *Oakley* v. *Hurlbut*, 100 Ill. 204 ;   *Bissell* v. *Lloyd*, id. 214.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

The bill in this case was brought by Samuel Groenendyke, Ellen Groenendyke and Mary McKee, heirs at law of Samuel Groenendyke, Sr., deceased, against Michael D. Coffeen, since deceased, asking to have an account taken in favor of complainants, of the partnership matters of the firm which was composed of Samuel Groenendyke, Sr., since deceased, and defendant, and also asking to have a trust declared in their favor, as heirs of the deceased partner, in one-half of certain lands alleged to have been purchased with funds be-

longing to the firm, but the title to which was taken in the name of defendant, and that partition might be made of such lands according to the interests of the respective parties. It is stated in the bill the partnership was constituted by a verbal agreement; that it was to last for an indefinite time, and was for the purpose of carrying on a general mercantile business, buying stock, and kindred business. Under that agreement business was commenced in 1841, and it is alleged it continued until the death of Groenendyke, which occurred on the 19th of April, 1860. It is alleged in the bill, the firm, during its continuance, accumulated a large amount of personal assets and real estate; that defendant was the active member of the firm, and as such had charge of the books of the concern during the continuance of the co-partnership, and since the dissolution has had the control of the books as surviving partner, and that the books show no balancing of accounts or settlement between the partners, or between the survivor and the representatives of the deceased partner. It is also charged there never has been any settlement made of such partnership matters from the date of the formation of the firm down to the time of filing the bill, and that defendant has always refused to account with complainants, although often called upon and entreated to account with them. Another important allegation in the bill, and one, as the sequel will show, about which much controversy exists, is, that on or about the 1st of November, 1869, defendant falsely represented unto the administrator of the deceased partner, and to complainants, that the amount due from him as surviving partner was only the sum of $10,000, and also that he had purchased certain lands described, in his own name and in the name of the firm, and none others, and that relying upon such representations, and believing them to be true, complainants did consent to a partition of such lands, and received a conveyance from defendant for a part of such lands, and that since receiving such conveyance complain-

ants have taken actual possession of the lands conveyed to them, and made valuable improvements thereon. Other specific allegations are contained in the bill, but in the view taken of the case it will not be necessary to state what they are in order to an understanding of the discussion that is to follow. The general prayer for relief is, that an account of the personal assets and profits of the firm may be taken, and also that a trust in the lands described may be declared in favor of complainants, and also that an account be taken of the profits arising from such lands.

The answer of defendant admits a partnership was formed between himself and Samuel Groenendyke, for carrying on a general mercantile business; that as such partners they commenced business in 1841, and continued until 1859, when they sold their stock of goods, and that then their business as general merchants ceased, and that a dissolution of such partnership took place by mutual consent in 1859, before the death of Groenendyke, which occurred at the time stated in the bill. It is also averred in the answer of defendant that before the death of Groenendyke the partnership matters were settled, as far as possible, and were kept settled as between the partners until the death of Groenendyke, at which time the assets of the firm unsettled consisted mostly of desperate claims, and lands. Defendant denies by his answer that he has refused to account with complainants, but says he was always ready, and has importuned them to settle with him the partnership matters, and make a final winding up of the same, and that on December 1, 1869, complainants did settle with him as surviving partner, and received a full and fair division of the personal assets, after all liabilities are taken into consideration, which sum amounted to $10,000; that at that time amicable partition was made between complainants and defendant by mutual conveyances of all lands of the co-partnership, after a full and fair investigation and disclosure, which was a fair and just division,—not induced

by any false representations by defendant, who concealed no knowledge of facts pertaining to assets of the co-partnership from complainants,—and also avers the matters complained of by complainants in their bill did not occur within five years next before the filing of the bill, and for that reason they should be barred. Other matters are contained in the answer, but it will not, perhaps, be necessary to make any further statement. After replication to the answer was filed, the cause was referred to the master in chancery, "who was ordered to state conclusions of law and fact herein, and to state account." At a subsequent term of court, after the cause was referred to him, the master in chancery made and filed his report, in which he stated his "conclusions of law and fact," also stated the amount he found to be due from defendant to complainants, and although he was not directed by the court to take evidence, he appended thereto a report of testimony, paged "from A to No. 370, with exhibits attached." The report of the master as to his conclusions of law and fact is quite elaborate, and is no doubt the result of much patient labor and careful consideration. Numerous exceptions to the findings of the master were filed, both by complainants and defendant, all of which were overruled by the master, except, upon exception taken by defendant, he made a correction as to the amount due from defendant to complainants. On the final hearing the court overruled all of the exceptions taken to the master's report by complainants, and sustained all the exceptions taken thereto by defendant, but in all other respects the master's report was approved; and the court thereupon found, from the evidence, that on December 1, 1869, complainants and defendant had a full, fair and just settlement and division of all the real and personal estate pertaining to the firm, which was accepted and acted upon by all the parties from that time to the filing of the bill; that the matters set up in the bill are stale, and of such a character that the lapse of time does, in equity, bar complainants from assert-

ing the same in a court of equity; that defendant had been guilty of no fraud or concealment; that the allegations of the bill are not sustained by the proof; that the equities of the case are with defendant, and thereupon the court entered a decree dismissing the bill for want of equity. The decree seems to have been rendered on the 13th day of April, 1878. Since then defendant, Michael D. Coffeen, has died, and the writ of error on which the case was brought to this court was sued out on the 26th day of February, 1883.

Of the findings by the master those contained in the ninth and twenty-fifth paragraphs are the most important, and are those about which the contest hinges. In the ninth division it is recited the master found the real estate of the firm was divided December 1, 1869, and in the twenty-fifth division that he found the balance due from defendant to complainants, December 1, 1869, to be $11,040.22. But by a subsequent report the latter finding was corrected, so that the master stated the amount due from defendant to complainants at the date mentioned was $9832.72. The reason for not allowing any interest on the amount found to be due from defendant to complainants, either before or after December 1, 1869, was, the master found that both parties had shown a great degree of carelessness about arriving at a final settlement so long after the dissolution of the firm, when no impediment lay in the way; and because he found no balance had been struck before 1875, and there never having been a time when the parties could have known what amount was due, the master was of opinion the Statute of Limitations had not barred the suit. The master, however, found that all parties evinced gross negligence and unpardonable *laches* in making no attempt at final settlement until 1869, when a fruitless attempt was made.

One exception,—the sixth of the series,—taken by complainants to the master's report is, that he did not find, from the evidence, certain lands described in the bill were held in

trust by defendant for the firm, and were not taken into consideration or included in the partition of the lands of the firm between its surviving partner and complainants. As has been seen, the master did find "that the real estate of the firm was divided December 1, 1869," and that is equivalent to a finding that all the lands of the firm were divided, and that none others were held in trust for the firm or complainants. Unless the sixth of the series of exceptions taken by complainants to the master's report is broad enough to cover it, there was really no exception to that finding of the master as to the division of the real estate that belonged to the firm; but treating it as an exception to this paragraph of the report, it was overruled by the master, and his ruling in that respect was sustained by the court on the final hearing of the cause. The sufficiency of the testimony to sustain that ruling of the master, and of the court, in that regard, will be considered further on.

Defendant excepted to the finding of the amount due from him to complainants, as stated in the twenty-fifth division of the original report, and also to the supplemental report on the same subject, which exception was sustained by the court. Complaint is made the court erred in its ruling on that portion of the master's report, and the point made has been the subject of elaborate argument by counsel. This branch of the case will also be considered further on, with the principal question in the case.

As has been seen, after ruling upon the exceptions to the master's report, taken by the respective parties, the court proceeded further, and found that on the first day of December, 1869, complainants and defendant made a full, fair and just settlement and division of all the affairs, estate, real and personal and mixed, choses in action and assets whatsoever, of and pertaining to the late partnership heretofore existing between Samuel Groenendyke, Sr., since deceased, and defendant, and that such settlement and division were

accepted and acquiesced in by the parties herein, and acted upon by them as a final settlement, and rights accrued thereunder from that time to the filing of the bill herein.

The errors assigned call in question the correctness of the rulings of the court on the exceptions taken by the respective parties to the master's report, and also the findings of fact by the court in the decree, and as they all raise the same principal questions, it will be most convenient to consider them together. The questions arising on the record, as counsel state them, are, first, was anything due from defendant, as surviving partner, to complainants, out of the personal assets of the late firm of M. D. Coffeen & Co., at the time of filing the bill; second, did defendant purchase any of the lands described in the bill with money of the firm, the title to which he took in his own name, and appropriated to his own use; and third, were the matters claimed by complainants in their bill, or any of them, in fact barred by any statute, and did the court properly declare them to be stale. It will be perceived these are questions of fact, and no doubt they were determined by the trial court on evidence heard by it. This court can only reconsider them as questions of fact, depending for solution upon evidence. The rule is a familiar one that it will be presumed the findings of the chancellor touching facts recited in the decree as having been found by him, were warranted, unless the testimony found in the record shows to the contrary. A party dissatisfied with the findings of fact upon which the decree is based must bring the testimony before this court that will show that such facts were erroneously found, otherwise this court will presume the evidence warranted the findings of fact as recited in the decree.

The decision of this case might be placed on the ground it does not appear from any certificate of evidence, or otherwise, that all the evidence heard by the circuit court on final hearing of the cause is contained in the record. Unless that

fact was made to appear this court could not say the facts recited in the decree were not well found.   Undoubtedly the rule is that all depositions on file in the cause, and the master's report of evidence, become a part of the record in a chancery cause, without any certificate of the court declaring them to be a part of the record.   Under that rule the evidence reported by the master in this case may be considered as a part of the record, notwithstanding there is no certificate of the court to that effect.   The practice in such matters is well understood, but the difficulty is it does not appear, from anything in this record, that the master's report contains all the evidence heard, either by the master or the court. Neither the court nor the master certifies that it does.   It is quite apparent from an inspection of the record, that testimony other than that contained in the report must have been considered, both by the master and the court.   On the first branch of the case, was anything due from the surviving partner to complainants out of the personal assets ?   The master found a certain sum was due.   Although the master does not state how he arrived at that conclusion, it must have been reached by a personal examination of the books of the firm, or from the testimony of expert accountants who had made examinations, and made abstracts of their contents. But this court can not ascertain, from an examination of the master's report, how that result was, in fact, reached.   Of course the books of the firm are not made a part of the record, and it would be impracticable to make them a part of it, or for this court to consider them if they were so made a part of the record.   Only abstracts of their contents could properly be incorporated in a certificate of evidence.   The trial court sustained an exception to the master's report as to the amount found to be due to complainants.   That must have been done for some reason arising out of the evidence.   It might be the court, on final hearing of the cause, heard the testimony of expert accountants who had made examinations

of the books, and made abstracts of their contents, and in that way determined the sum found by the master was not correct, and if so, that evidence should have been preserved in the record. The only testimony of that character contained in the master's report is that given by the witnesses as to what Conkey and Wilson did in 1875, and that is neither full nor specific enough to give any very clear understanding of the contents of the books. The same reasoning will apply with equal force to the two other branches of the case argued by counsel.

It will be observed the master found that before the commencement of the suit no balance had ever been struck showing the condition of the firm books. It was not absolutely necessary a balance should have been struck, to a final settlement. A satisfactory conclusion on which to base a settlement might have been reached otherwise. As has been seen, the master found the effort made to effect a final settlement, on December 1, 1869, was a fruitless attempt. To that finding the court not only sustained an exception, but went further, and found, by its decree, that on the 1st day of December, 1869, there was a full, fair and just settlement and division of the real and personal estate of the late firm, made between complainants and the surviving partner. That must have been done on evidence heard by the court. Whether all the evidence heard by the court on this phase of the case is contained in the master's report of the evidence, does not appear from any certificate of the court, or otherwise. That would be a sufficient reason for an affirmance of the decree in this respect. Unless all the evidence heard by the trial court was preserved in the record, in some manner known to the practice in such cases, this court will presume the evidence warranted the finding of fact, as was done by the decree.

It may be conceded the master's report contains all the evidence heard either by the master or the circuit court, and

still it does not appear the decree was erroneous. First, in respect to the ruling of the court in sustaining an exception as to the finding of the master as to the amount due from defendant to complainants, how is it shown the decree in that particular is not warranted by the evidence? The master does not state how he made up his statement of the accounts between the partners, so as to arrive at the balance due. It may have been, and doubtless was, from a personal examination of the books. But his report contains testimony to the effect two expert accountants had made very careful examinations of the books, and the conclusion they reached differs widely from his own. It is said their calculations rest on an erroneous basis. No evidence to that effect is discovered in the record. So far as the testimony shows what was done by these accountants, no objection is perceived to it. It may be the court regarded their testimony as being more satisfactory, and based its decree upon it. Second, but concerning the finding of the circuit court touching the alleged settlement of December 1, 1869, there is still less reason to be dissatisfied with it, on the evidence contained in the report submitted. On this branch of the case the evidence has been carefully examined, for it is thought to be the controlling question arising on the record. It is somewhat conflicting, but the weight of the evidence would seem to be in favor of the conclusiveness of that settlement, as well as its justness. The basis agreed upon for adjusting the accounts was not far out of the way. For the time being it was acquiesced in by all parties. The heirs took possession of the lands conveyed to them, and made valuable improvements thereon, and also appropriated to their own use the personal assets that came to them on the division that was made. No dissatisfaction appears to have been expressed in regard to it until 1875, when the heirs, or some of them, thought they had been overreached in that settlement. It was then agreed the books should be submitted to the examination of two accountants,

who were agreed upon by the parties, and who were selected
for their skill in such matters.   Every facility was afforded
them, and these accountants bestowed a great deal of labor
upon the firm books, and after many days spent in that work
they reached a conclusion, which they communicated to the
parties, in writing, but it. was not satisfactory to complain-
ants.   Some evidence was given tending to show it was
agreed the conclusion that should be reached by the account-
ants should be absolutely binding on the parties, as an arbi-
tration, but complainants disclaim any conclusive effect of
that examination of the books, and filed their bill for an
account as though no such examination had been made.
The bill is not framed with a view to have a decree for the
amount found due by the accountants who examined the
books in 1875.   If it was an arbitration, or a submission in
the nature of an arbitration, and was obligatory on all par-
ties, it is apprehended the remedy upon it would be at law.
The partnership accounts, in the aggregate, were, perhaps,
not less than $100,000,—certainly quite a large sum,—and
the most importance that can now be attached to the exam-
ination of the books made in 1875, is, that it shows the settle-
ment made in 1869 was not far from right,—certainly that it
worked no serious injury to complainants.   There is no con-
troversy as to the fact an effort was made in 1869 to effect a
final settlement between the heirs of the deceased partner
(all of whom were then of age) and the surviving partner.
The complaint is, the surviving partner concealed information
from the heirs, or that he did not make that full disclosure to
them that was important to an understanding of their rights,
and for that reason the attempted settlement ought not to be
binding upon them, in equity.   As before remarked, there is
no satisfactory evidence he concealed anything within his
knowledge that would have been beneficial to the heirs of his
deceased partner.   He placed the books of the concern where
they could have been examined with that care that would

have disclosed their interests in the personal assets, and certainly equity and good conscience did not require him to do more.

It will not be necessary to the present decision to determine the question discussed, whether a bill for an account, brought by one partner against another, will be barred unless brought within five years after dissolution of the co-partnership; but it may be fairly said the matters alleged in this bill are stale, and for that reason equity will treat them as barred, whether coming directly within the purview of any statute of limitation or not. The answer makes that issue, and upon the facts appearing, it is a conclusion of law the claim of complainants insisted upon is stale, and relief as to the matters contained in the bill might, for that reason, be very properly withheld. The partnership commenced in 1841, and continued actively until 1859, when their stock of merchandise was sold, and by mutual consent their business as general merchants ceased at that time. Whether the firm was then dissolved is a matter of no consequence. It was certainly dissolved on the death of one of the partners, which occurred on the 19th day of April, 1860. The bill was not filed until the 24th of February, 1876. A period of nearly sixteen years had then elapsed since the dissolution of the partnership took place. The youngest heir of the deceased partner had become of age nearly or quite twelve years before the bill was filed. It appears from the master's report, the books of the concern have always been open, both before and since the dissolution, to all the parties, and complainants could have had them examined at any time by persons skilled in that kind of labor. The master also found as a fact that "no impediment seems to have been in the way" of a final settlement of the partnership during all that long period that was suffered to elapse. That conclusion is fully warranted by the testimony submitted with his report. No reasonable excuse is shown for the unusual delay that has

intervened. None of the parties, since 1864, were under any disabilities, and if unsettled matters pertaining to the partnership existed, complainants should have elected to proceed in apt time. That they did not do. *Oakley* v. *Hurlbut*, 100 Ill. 204; *Bissell* v. *Lloyd*, id. 214.

The decree of the circuit court will be affirmed.

*Decree affirmed.*