C. J. ALLEN

*v.*

J. H. HENN *et al.*

*Opinion filed June 19, 1902.*

1. APPEALS AND ERRORS—*effect where certificate of evidence does not
purport to preserve all the evidence.* If the certificate of evidence in
a chancery case does not purport to preserve all the evidence, it
must be presumed there was sufficient evidence to sustain the find-
ings of fact recited in the decree.

2. SAME—*when findings of fact recited in decree are conclusive.* Where
the findings of fact recited in the decree are not contradicted by
the evidence in the record they are conclusive upon a court of re-
view, and the question whether or not they were contradicted by
the evidence cannot be determined on review, unless the record
presents all the evidence heard by the chancellor.

3. FRAUD—*when representations are of matters of fact.* Representa-
tions by a vendor that the land is first-class, high, dry, river-bottom
land, covered by valuable timber, except forty acres which was in
high cultivation, are representations of fact, the falsity of which
is ground for relief in a court of equity.

4. SAME—*right of vendee to affirm the sale after discovering fraud and
recoup in damages.* A defrauded buyer may, instead of rescinding
the contract, stand by the bargain after he has discovered the
fraud and recover damages therefor or recoup in damages if sued
by the vendor, since his action in affirming the bargain merely
extinguishes his right to rescind.

5. SAME—*when purchaser may set up fraud on foreclosure.* If a defrauded purchaser of land has paid down all that the land is worth but has given notes and a mortgage for the balance of the purchase price, he may wait until proceedings to foreclose the mortgage are begun and set up the fraud in his answer, showing that the notes and mortgage were without consideration, and maintain a cross-bill for their cancellation.

*Allen* v. *Henn*, 97 Ill. App. 378, affirmed.

APPEAL from the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Clinton county; the Hon. TRUMAN E. AMES, Judge, presiding.

The Appellate Court in deciding this case make the following statement:

"This was a bill in equity, filed May 1, 1900, to foreclose a mortgage, dated November 27, 1899, on 290 acres securing three notes of the same date, one for $1100.00, due in one year, and two for $900.00 each, due two and three years after date, all bearing seven per cent interest, and given for a part of the purchase price for the land mortgaged. By their terms none of the notes were due when this proceeding was commenced. The right to foreclose was based upon the allegation that covenants in the mortgage to insure the buildings, pay the taxes, and not to commit waste, had been broken, and that, by the terms of the mortgage, for such breaches, complainant had an option to declare all of the notes due, and to foreclose.

"Appellees answered the bill, admitting the execution of the notes and mortgage, but denying a breach of any of the covenants. They also filed a cross-bill, and an amended cross-bill, in which they allege, specifically and at length, fraud and false representations by appellant as to the value and character of the land, and the timber and improvements on it, and allege that they were induced to buy by these false and fraudulent representations. Appellees further allege that they have

already paid $3300.00 in land and $400.00 in money, and that this is more than the land deeded to them is worth, and that the notes are without consideration, and the mortgage is a cloud upon the title. The answer to this cross-bill denies these allegations. Replications were filed, and these are the issues in the case.

"The chancellor found that appellees owed appellant $12.40 for taxes paid by him, and ordered that sum to be paid by them to him, and in default that the land be sold. Upon all other issues the findings were against appellant, and, as to these issues, the original bill was ordered dismissed. Upon the allegations of the cross-bill, specific findings of fact were made sustaining its allegations, and the notes and mortgage, specified in the original bill, were decreed to be null and void, and that they should remain in the files of the case. All costs were taxed against the complainant, except $5.00 which were taxed against defendants."

Upon appeal to the Appellate Court the decree of the circuit court was affirmed; and the present appeal is from such judgment of affirmance.

T. E. FORD, and VANHOOREBEKE & LOUDEN, for appellant.

ANDREW L. CHEZEM, and M. P. MURRAY, for appellees.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

*First*—This case was heard by the chancellor below in open court upon documentary evidence introduced, and upon the oral testimony of the witnesses, some thirty in number. The specific facts, found by the trial court in its decree, are substantially as follows:

The appellees, defendants in the original bill and complainants in the cross-bill, who, at the time of the transactions herein narrated, were young persons, J. H. Henn, twenty-two years of age, and Mae Henn, his wife, twenty-

three years of age, and were conducting a dry-goods, hardware and grocery store at Charleston in Coles county, were the owners in July, 1899, of an interest in a house and lot in Charleston worth $1000.00, and of a stock of goods in said building worth $800.00, and of a lease of 160 acres of land in Nebraska. At the same time the appellant, C. J. Allen, was the owner of 290 acres of land in Clinton county. On July 22, 1899, Henn and Allen made an agreement, by the terms of which the said property of Henn and his wife should be conveyed and transferred to Allen in exchange for the 290 acres owned by him; and, in addition to said property, Henn was to pay to Allen for said land $3300.00, $600.00 on January 1, 1900, $900.00 on January 1, 1901, $900.00 on January 1, 1902, and $900.00 on January 1, 1903. Henn executed his notes for these amounts, aggregating $3300.00, bearing interest at the rate of seven per cent after maturity; and Allen and his wife delivered to Henn a bond for a deed of said 290 acres, conditioned that, upon the payment of said notes, Allen would make a deed thereof to Henn. The notes and bond for a deed bear date July 22, 1899. The exchange was made, and the property of Henn and his wife and the notes in question were delivered to Allen, and his bond for a deed was delivered to Henn. Afterwards, on November 27, 1899, the notes were surrendered by Allen to Henn, and Henn and his wife paid to Allen $400.00 in cash, leaving $2900.00 of the $3300.00 still unpaid. To secure said last named amount of $2900.00, Henn and his wife executed to Allen the notes and mortgage upon the 290 acres, sought to be foreclosed by the original bill filed in this cause, the notes and mortgage being for part of the purchase money of the 290 acres. At the same time, Allen executed and delivered to Henn a deed of the 290 acres.

The contract, so made between Allen and Henn, was induced by the wrongful and fraudulent representations of Allen, made to Henn and his wife. The representa-

tions, so made by Allen, were to the effect that the tract
of 290 acres was first-class, high, dry, river-bottom land,
not subject to overflow; that it had not been overflowed
within ten years; that it was covered by very valuable
saw timber, which had never been culled, consisting of
hickory, white oak, burr oak, ash, sycamore and other
varieties of timber; that it was all virgin forest except
40 acres, which 40 acres Allen wrongfully and fraudu-
lently represented to be in a high state of cultivation;
that the entire tract of 290 acres was worth and would
sell for $27.00 per acre in cash, and that the timber there-
on could be readily sold to meet the payment of all of
said notes as they matured.

The decree also finds, that Henn and his wife were
young, of the age of twenty-two and twenty-three years,
respectively, and without experience, and were ignorant
of the value of the lands in question, and of the quality
or value of the timber; that they informed Allen that
they were ignorant thereof, and would depend and rely
upon his statements as to the value of the land.   The
court further finds that Henn and his wife did so rely
upon the statements of Allen, and were deceived there-
by, and induced thereby to give in exchange their prop-
erty above described and Henn's notes for $3300.00, and
to accept from Allen his bond for a deed.   The court
further finds in its decree, that the 290 acres did not
exceed in value the sum of $5.00 per acre, including the
timber thereon; that the timber thereon was of the value
of about $100.00; that the land was low and wet; that
the amount of clearing thereon did not exceed six acres;
that, before the giving and execution of the notes and
mortgage sued on, Henn and his wife had paid to Allen
for the 290 acres, property of the value of $1800.00, and
$400.00 in cash; that Henn and his wife, after the execu-
tion of the notes and mortgage sued on, committed no
waste, nor suffered any to be committed upon the land;
that the building thereon did not exceed in value the

sum of $20.00, and is and was uninsurable; that Allen on May 1, 1900, paid $12.22 of taxes upon said premises, which amount is now due from Henn and his wife to Allen. The decree further finds that the amount paid by appellees to Allen is in excess of the value of the 290 acres; that Henn and his wife have paid to Allen the full value of the 290 acres; that the consideration for the exchange of property so made, and notes and mortgage given, has failed to the full extent of the amount specified in the notes; that there is nothing due upon said notes or mortgage to Allen, and that there is no equity in the original bill, but that the equity is with the cross-complainants, and that it would be inequitable to require Henn and his wife to pay the notes, or any part of the same, to Allen.

After making the order as to the payment of taxes, specified in the statement preceding this opinion, the court decrees that the mortgage, dated November 27, 1899, made by appellees upon the 290 acres, be set aside and vacated and declared null and void, and that the notes secured thereby are null and void, and of no effect whatever, and are therein so declared to be; and it is directed that the notes remain in the court as part of the files in the proceeding.

After a careful examination of the evidence in this case we are satisfied that the findings of the decree, as above set forth, are sustained by the evidence.

*Second*—The certificate of evidence, found in the record, does not state that the evidence, set forth in the certificate, was all the evidence presented to and heard by the court upon the hearing below. The facts found by the decree, as above set forth, justified the court in entering the decree which it rendered. If there had been no certificate of evidence in the record, it would be presumed that the findings of the decree were warranted by the proofs heard by the court. But as the certificate of evidence does not purport to preserve all the evidence

heard by the trial court, it must be presumed that there was sufficient evidence to warrant and sustain the findings. (*Brown* v. *Miner*, 128 Ill. 148; *First Nat. Bank* v. *Baker*, 161 id. 281).

In *Jackson* v. *Sackett*, 146 Ill. 646, we said (p. 655): "It is well settled that, in proceedings in chancery, it is incumbent upon the party seeking to sustain a decree in his favor, to preserve the evidence, upon which it is based, in the record in some proper form. * * * But there are various modes in which the evidence may be preserved in the record. * * * Where evidence is taken orally in open court, it must be preserved by a certificate of evidence, but where the decree recites the facts found by the court from the evidence, it will be presumed, in the absence of anything in the record showing the contrary, that the facts thus found were proved by competent evidence."

In *Allen* v. *LeMoyne*, 102 Ill. 25, we said (p. 27): "Since the adoption of the act, allowing oral testimony to be heard on the trial of a cause in equity, it has been the constant practice to preserve the evidence by recitals in the decree, and * * * the statements of the evidence in the decree can no more be questioned by the Appellate Court, than can those of a bill of exceptions in a common law case. Where the facts are found by the court, and recited in the decree, the finding cannot be reversed, unless all the evidence heard on the trial is preserved in the record, and thus brought before the court. Where the evidence is not all preserved, it will be presumed that the evidence, heard and not preserved, was sufficient to authorize the finding." (*Groenendyke* v. *Coffeen*, 109 Ill. 325; *Hannas* v. *Hannas*, 110 id. 53; *Corbus* v. *Teed*, 69 id. 205).

Where the findings of fact, made in the decree of the trial court, are not contradicted by the evidence in the record, they must be held to be conclusive, so far as this court is concerned, and whether or not they are con-

tradicted by the evidence cannot be determined by a re-
viewing court, unless it appears that the record presents
all the evidence heard by the chancellor in the court be-
low. (*Cooley* v. *Scarlett*, 38 Ill. 316; *Allen* v. *LeMoyne*, 102
id. 25). Here, in the absence of a statement in the cer-
tificate that the latter contains all the evidence heard by
the trial court, we are bound to presume that there was
sufficient evidence to warrant and sustain the findings.

*Third*—It is urged by counsel for appellant, that the
statements, alleged to have been made by the appellant
to the appellees as to the value of the land, were mere
matters of opinion, and that fraudulent representations
cannot be predicated upon such expressions of opinion.
It is true that a party, trying to effect a sale of his own
property, has a right to puff it, and exalt its value, and
that false representations as to its cost and value, where
no relation of confidence or trust exists between the
vendor and vendee, will not be regarded as constituting
a fraud in legal contemplation; as such representations
are looked upon as mere expressions of opinion about
matters, which the other party can judge of for himself.
(*Tuck* v. *Downing*, 76 Ill. 71). But an examination of the
findings of the decree, as above set forth, will show that
the representations, made by the appellant to the appel-
lees, were statements of fact rather than expressions of
opinion. It was a statement of fact, that the land was
first-class, high, dry, river-bottom land, and not subject
to overflow. It was a statement of fact that the land was
covered by valuable timber. It was a statement of fact
that all the land, except 40 acres, was virgin forest, and
that such 40 acres was in a high state of cultivation. As
the decree finds that these statements of facts were false
and fraudulent, they constituted such false representa-
tions as will be relieved against by a court of equity.
(*White* v. *Sutherland*, 64 Ill. 181).

*Fourth*—It is claimed, on the part of appellant, that,
even though the agreement of July 22, 1899, may have

been brought about by fraudulent representations, yet that the surrender of the old notes and bond for a deed on November 27, 1899, and the execution of a deed of the 290 acres by Allen to Henn, and the execution of new notes and a mortgage upon the premises by Henn and his wife on that date, constituted an affirmance of the contract. It is contended that, by reason of the new transaction thus made on November 27, 1899, the appellees are barred from any relief, upon the alleged ground that at that time they had ascertained and knew the actual condition of the premises, and the falsity of the representations, if there were any false representations.

In the first place, the proof tends to show that a party, who went with Henn to look at the premises, either through fraudulent design or mistake, pointed out to him other premises than those in question. Land, which was of good quality, was shown to him by such person, but the real land, which appellant proposed to sell to him, was not shown to him. Mrs. Henn never saw the land exhibited, or the land sold. The evidence further shows that, when Henn at a subsequent time went to the premises for the purpose of cutting timber, in order that he might by its sale realize money enough to pay his first note about to fall due on January 1, 1900, the appellant interfered with his cutting of the timber, and threatened him with a forfeiture of the bond for a deed. The conduct of the appellant was such as to force the appellees into some new arrangement, such as that which they made on November 27, 1899, in order to save themselves from total loss.

But the appellees here are not seeking a rescission of the contract. The original bill in this case was filed by the appellant for the purpose of foreclosing the mortgage executed by appellees. A defrauded buyer may, instead of rescinding a contract, stand by the bargain even after he has discovered the fraud, and recover damages therefor, or recoup in damages, if sued by the vendor.

(8 Am. & Eng. Ency. of Law,—1st ed.—p. 819; *White* v. *Sutherland*, 64 Ill. 181). "The affirmance of a contract by the vendee, after discovery of the fraud, merely extinguishes his right to rescind, while his other remedies remain unimpaired." (Ibid.) In this regard the case of *White* v. *Sutherland, supra*, is similar in its facts to the case at bar. In the *Sutherland case*, it appeared that a purchaser of land relied upon the fraudulent representations of the vendor in making the purchase and made a partial payment of the purchase money, but, after he discovered the fraud, executed his notes for the balance and a mortgage on the premises to secure the same; and it was there held that, while such acquiescence or affirmance of the contract on the part of the purchaser might operate to deprive him of the right to rescind for the fraud, yet, upon a bill to foreclose the mortgage, he had the clear right to recoup the damages occasioned thereby. It was also there held, that it was not essential to such right of recoupment, that he should have asserted it before paying any of the notes; that he might then have resisted the payment, but was not obliged to do so, and might delay until proceedings were commenced to foreclose, and then present his claim for damages. In cases of fraud upon the part of the vendor, the vendee who alone has the right to claim a rescission, may remain silent and bring his action to recover damages for the fraud, or may rely on it by way of defense to the action of the vendor, although there has been full acceptance of the property with knowledge of its defects. An affirmance of the contract by the vendee with such knowledge merely extinguishes his right to rescind the sale, but his other remedies remain unimpaired. (*White* v. *Sutherland, supra*).

In the case at bar, the facts show that appellees had turned over to the appellant property and money to the amount of $2200.00, while the 290 acres deeded to them were not worth more than $1450.00. They had, therefore,

paid in full for the 290 acres. When the bill to foreclose the mortgage to secure $2900.00 more was filed against them, they set up the fact that such notes and mortgage were without consideration, and thereby claimed a recoupment in damages, or what, in substance, amounts to a recoupment in damages.

Under the doctrine laid down in *White* v. *Sutherland*, *supra*, it was proper for them to delay, until proceedings to foreclose were instituted, and then present the claim, set up in their answer to the original bill and in their cross-bill. If there was an affirmance of the contract, it only deprived appellees of the right to rescind, but did not abridge their right to recoup for the injury. (*Dillman* v. *Nadlehoffer*, 119 Ill. 567).

We discover no error, which would justify us in reversing the decree of the circuit court. Accordingly, the judgment of the Appellate Court, affirming that decree, is affirmed.

*Judgment affirmed.*