**N. A. Smith, Appellee, v. E. S. Hopping et al., Appellees, and William Sadler, Appellant.**

### Gen. No. 5358.

Fraud—*when general statements constitute misrepresentations.* While, ordinarily, general statements constituting misrepresentations will not afford a basis for relief, yet, in equity, if the parties are not dealing on equal terms and an actual fraudulent result is accomplished by such fraudulent statements, relief will be granted.

Foreclosure. Appeal from the Circuit Court of Du Page county; the Hon. Mazzini Slusser, Judge, presiding. Heard in this court at the April term, 1910. Affirmed in part, reversed on cross errors and remanded with directions. Opinion filed November 18, 1910. *Certiorari* denied by Supreme Court (making opinion final).

L. N. Hoover, for appellant.

L. C. Cooper and Kremer & Greenfield, for appellees.

Mr. Presiding Justice Willis delivered the opinion of the court.

On November 18, 1903, Edward S. Hopping and Jennie E. Hopping, his wife, executed and delivered

their promissory note for $1,560 to one J. A. Young and, to secure the payment of the same, at the same date, executed a trust deed on certain real estate owned by them. This proceeding, a bill to foreclose said trust deed, was commenced in August, 1905, by Smith, endorsee of the note; and later the Hoppings filed their answer therein and also a cross bill, making the original complainant and others cross-defendants and praying that a contract therein set out, together with the note and trust deed, be declared void, that the contract be rescinded, and that an accounting be had to ascertain the damages sustained by the cross complainants. Various amendments were made to this cross bill at different times, the last amendment striking out the averments and prayer of the cross bill as to the rescission of the contract. After answers had been filed by the various cross-defendants, there was a trial by jury, which resulted in a disagreement. Later, the cause was tried without a jury and a decree was entered by the court, awarding to the Hoppings, the cross complainants, damages in the sum of $1,010, and abating the lien of said trust deed upon their real estate in that amount, leaving it as a subsisting lien in the sum of $550. One of the cross defendants, William Sadler, has appealed from that decree, and cross errors have been assigned by the Hoppings.

The facts, as proved by a preponderance of the evidence, are as hereafter stated. William Sadler owned and conducted a nursery business at Bloomington, Illinois, under the name of the Home Nursery Company. In the summer of 1903, the Hoppings who then owned and were living upon a ten acre tract of land near Glen Ellyn, in DuPage county, were approached by one Wilkerson, a travelling salesman for the Home Nursery Company under the direct superintendence of one Young, a general agent for said company, and the Hoppings gave said Wilkerson an order for nursery goods amounting to $560 in August of that year.

In September, 1903, before the delivery of the goods on said order, Wilkerson and the general agent of the nursery company, Young, went to the Hopping residence and took another order from them for an additional $1,000 worth of trees. At that time the two orders were combined in one contract. Later, the trees were set out on the land of the Hoppings, and, in November, 1903, the Hoppings executed the note and trust deed here in question. The note was afterwards assigned by Young to Smith, the original complainant, and the proceeds thereof were remitted to Sadler, the owner of the nursery company.

The evidence shows that Hopping was a draughtsman, employed in Chicago, and was entirely unfamiliar with farming or horticulture; that he had so stated to both Wilkerson and Young and that he would have to rely upon their representations as to the suitability of his soil for the growth of fruit trees; that Young and Wilkerson represented that the Hopping land was especially adapted to the growth of plum and cherry trees and that they would plant the necessary trees and take care of them for five years, replacing all trees that died during that time, and at the end of that period Hopping could pay for them at the rate of one dollar per tree; that the agents of the nursery company also represented that the variety of plum tree sold by them, known as the Pottawatamie plum, was proof against the attacks of an insect known as the curculio and that they had set out large orchards of that kind of plum tree for people in that vicinity, from which the owners were receiving large returns, and that the Hopping land was in first class condition for the planting of a plum orchard. Young showed Hopping printed descriptions of the Pottawatamie plum and also what he claimed were genuine testimonials from owners of such orchards, showing the large returns to be derived therefrom. Numerous other representations were made

to the Hoppings by the agents of the nursery company, all tending to convince that the raising of plums in that locality was perfectly feasible and highly profitable, and that the company would guarantee their trees and would take the fruit from Hopping at the end of the fifth year at the rate of one dollar per tree and would evaporate the fruit for him, that being a part of the company's business. The evidence further shows that at the time of the trial, only 637 trees out of the 1,500 presumably planted, were still living, and that the plum trees planted were not the species known as the Pottawatamie plum, but were another cheaper variety.

The preponderance of the evidence also shows that nearly all of the statements and representations made to the Hoppings by the agents of the nursery company were false and must have been known to such agents at that time to be false. The Hopping land instead of being in prime condition for tree culture, was covered with a heavy growth of quack grass, which is distinctly deleterious to tree culture. The company neglected or refused to take any care of the trees, as agreed by its agents. The trees planted were not the variety specified. It is impossible to raise plums profitably anywhere in northern Illinois on account of the ravages of the curculio, and at the time these statements were made by the agents of the company there were no orchards in existence in northern Illinois where plums were successfuly raised for the market. No attempt was made by Sadler, or the company or Smith, to prove the truth of the representations of Young and Wilkerson to the effect that large orchards of such plum trees had been planted in that vicinity and were being profitably cultivated. The company was not in the business of evaporating fruit. It is probably true that some of the statements made by the representatives of the company were merely promises for the future, and some may have been a

lawful praising of their own goods, and these could not alone be made a basis for an action of fraud, and some may, in fact, be said to have been merged in the written contract. Still, with such doubtful statements eliminated, there still remains many false representations made for the manifest purpose of defrauding Hopping. They were positive statements of present existing facts, or supposed facts, which were material in negotiating a contract with one like Hopping, who knew nothing about the business, and were statements upon which he had a right to rely under the circumstances. ''Ordinarily, statements of an indefinite or general character made by either of the parties pending a negotiation for the sale of property, relating to its cost or value, or offers made for it, and the like will not, in the absence of special circumstances, afford any ground for avoiding the sale, although false, and made with a fraudulent intent. * * * Yet it is just as well settled, that where the contracting parties, for any cause are not on equal terms, and such representations are gross exaggerations, resulting in an unconscionable bargain, equity will not hesitate to interpose in favor of the injured party.'' Dillman v. Nadelhoffer, 119 Ill. 567. Hopping told Young, as he had previously told Wilkerson, that he knew nothing about fruit raising or the suitability of his soil for the planting of fruit trees, and that he would have to rely upon his statements as to all those things. Clearly, they were not upon equal terms. Young was an experienced nursery salesman, and had been in the nursery business for many years, and Hopping, knowing nothing of fruit raising, had a right to rely upon his representations, and those made by Wilkerson; and we are of the opinion, that he is entitled in equity to recoup the damages resulting from a bargain so clearly unconscionable.

Appellant contends that, as the written order signed by Hopping provided that no agent of the company

had any power to make any stipulations not therein contained, he was not bound by what Wilkerson and Young said to Hopping in negotiating the contract. If this were true, then parties desiring to obtain undue advantages in dealing with others, could always protect themselves from the fraudulent statements of their agents by inserting such a provision in the printed orders finally signed by the parties. The proof clearly shows that Young was the general agent of the nursery company or Sadler, and that Wilkerson was working under him, and that Sadler accepted the proceeds of the Hopping contract, and he, in our opinion, cannot now be heard to repudiate Young's agency. It is entirely clear that if Young and Wilkerson had told the truth to Hopping, they would never have taken the order, and Sadler would never have received any benefit therefrom.

It is urged by appellant here that the Hoppings cannot rescind the contract. The record shows that they are not seeking a rescission. On the trial before the chancellor, the answer and the cross bill were amended by striking out the allegations declaring an election to rescind. This amendment was, in effect, an election to abide by the contract and to recoup the damages sustained by reason of the fraud. "A defrauded buyer may, instead of rescinding the contract, stand by the bargain even after he has discovered fraud, and recover damages therefor, or recoup in damages, if sued by the vendor." White v. Sutherland, 64 Ill. 181; Allen v. Henn, 197 Ill. 486. This may be done in a proceeding to foreclose a mortgage executed by the parties defrauded in the bargain. Allen v. Henn, *supra.*

Appellant contends that appellee had an adequate remedy at law and that the cross bill was not germane to the original bill. These points were not raised in the trial court and therefore need not be considered here. Appellant claims to have demurred to the cross

bill on those grounds, but the record does not disclose such action. It is true, exceptions were taken after the cross bill had been amended, but such exceptions were only to the last amendment. Moreover there are no assignments of error which raise these questions.

It is clear to us that the damages awarded Hopping were supported and warranted by the evidence. In addition thereto cross errors are assigned by Hopping for the failure of the court below to allow damages for the cherry trees which died within five years after the date of the contract. The contract provided that "all trees that die from any fault of said nursery will be replaced free of charge for five years." It appears from the record that, out of the 500 cherry trees pressumably planted, 222 never showed any signs of life and only 183 were alive at the time of the trial, which was shortly after the expiration of the five years' period. The Hoppings had nothing to do with the planting of the cherry trees; there is no evidence to charge them with any responsibility with reference to them, except the cultivation of the land; and there is no proof that they did not properly cultivate the land. It follows then, either that the trees were dead when planted in the fall of 1903, or that they possessed so little vitality that they were unable to stand the shock of transplanting, or that they were improperly transplanted. Hence it is clearly apparent that the Hoppings should have been allowed the contract price for the 222 that never lived, with interest thereon at five per cent from November 18, 1903, the date of the note, and that the lien of the trust deed should have been further abated by that amount.

The decree is therefore affirmed in part and reversed on cross errors at the costs of appellant, and the cause is remanded with directions to enter a decree pursuant to this opinion.

*Affirmed in part, reversed on cross errors, and remanded with directions.*