DORER, Respondent, vs. HOOD, Administrator, Appellant.

*January 13—April 1, 1902.*

*Appeal: Record: Bill of exceptions: Ejectment: Recovery for improvements: "Color of title:" Administrator's deed: Statutes: Evidence: Presumptions: Betterments: Constitutional law: Good faith.*

1. Where the recitation that a bill of exceptions contains all the evidence is disputed by facts appearing on the face of the bill, the supreme court, as to all questions dependent on such facts, will treat the case as though such recitation were false, and indulge in every legal intendment to support the judgment.

2. A deed by an executor or administrator pursuant to a contract made by his decedent is declared by sec. 3911, Stats. 1898, to be effectual to pass the estate contracted for as fully as if the con-

tracting party himself were still living, and then executed the same. H., a life tenant in fact, but holding lands under an adjudication that she owned the fee, contracted to convey to D. by "a good and sufficient deed," free from incumbrances except taxes. On her death her administrator, pursuant to an order of the proper court, conveyed to D. "all the right, title and interest of the said H." in and to the lands described in said contract. *Held*, that D.'s title being upon his contract, deed, and the statute under which it was executed, it sustains a finding that he had "color of title," and D. is therefore entitled, under the provisions of sec. 3096 (allowing an unsuccessful defendant in ejectment to recover for improvements only while holding by color of title, etc.), to recover for taxes he had paid and improvements he had made. *Falck v. Marsh*, 88 Wis. 680, distinguished.

3. Sec. 3082, Stats. 1898, provides that a plaintiff in ejectment may, in addition to the recovery of possession, recover for rents and profits of the premises during the time they were withheld, not exceeding six years prior to the commencement of the action. In an action, by the unsuccessful defendant in an action of ejectment, to recover for improvements, it appeared that the plaintiff in the ejectment action had therein recovered judgment for rents and profits, but for what *period* it was uncertain, the evidence in that regard not being preserved in the bill of exceptions. *Held*, that it will be presumed that the trial court did not exclude evidence as to any rents and profits which were properly a setoff against a recovery for improvements.

4. Secs. 3096 *et seq.*, Stats. 1898, authorizing an unsuccessful defendant in ejectment to recover for improvements, are not unconstitutional.

5. The mere fact that improvements were made by the unsuccessful defendant in ejectment after notice of plaintiff's claim, and pending the ejectment action, is not evidence of bad faith.

6. Where an unsuccessful defendant in ejectment takes possession under a contract of purchase, and pursuant to its terms, the deed of the vendor, when made, relates back to the date of possession under the contract, and entitles him to recover for improvements from that date.

APPEAL from a judgment of the circuit court for Grant county: GEO. CLEMENTSON, Circuit Judge. *Affirmed.*

The defendant brought an action of ejectment against plaintiff, and this court directed judgment in favor of the

former in 107 Wis. 149. Judgment for recovery of the possession of the premises and for rents and profits amounting to $999.17, besides costs, was accordingly entered on July 23, 1900. Within one year the plaintiff commenced this action under subd. 3, sec. 3097, Stats. 1898, to recover the value of his improvements and for taxes paid. Reference is made to the former case for the facts shown as to defendant's title. The plaintiff claims that he entered into possession of the premises on or about August 9, 1893, under a land contract from Mary A. Haskins, the widow of the former owner, which was subsequently modified on June 9, 1896, by the terms of which he was to pay $600 to the personal representatives of the grantor and receive a deed of the premises. Mrs. Haskins died March 24, 1897, and upon application to the county court her executor made a deed of the premises to him. Plaintiff claimed title in good faith under said contracts and deed. His claim for improvements was confined to the time he was in possession, as was also his claim for taxes paid. He asked to have the amount found due him for improvements set off against the judgment obtained by defendant, and for a judgment in his favor for the balance. The answer set up the will of Stewart, mentioned in the former suit; that his widow was appointed administratrix, but never did anything toward the settlement of the estate, except inventory the property, having appraisers appointed, and the time limited for creditors to present claims. It then sets out the suit to construe the will and the judgment therein, and the failure to secure jurisdiction of the parties. It admits the contracts mentioned, but alleges that plaintiff knew the widow had no right to make them. The widow remarried January 2, 1887. The answer further alleges that plaintiff managed the premises for some years prior to the making of said contracts as the agent of the administratrix, and that such contracts were obtained by undue influence. The claim was also made that in the former suit the defendant was only allowed to recover rents and

profits from the death of the widow, March 24, 1897, to the date of judgment, July 23, 1900, and that he was now entitled to set off against the plaintiff's recovery the rents and profits from the date of the remarriage of the widow, in 1887, to the date allowed in the former suit. A claim was also made for some walnut trees cut from the premises by plaintiff. A special verdict was rendered, in which the jury found that the plaintiff held possession of the land adversely by color of title asserted in good faith; that plaintiff made valuable improvements on the land between August 9, 1893, and July 23, 1900, amounting to $1,869.50; that he paid taxes, which, with interest, amounted to $216.22; that $135 of said improvements were made prior to June 19, 1897; that the walnut trees cut by plaintiff were worth $21; and that the value of the use of the land since the date of the ejectment judgment was $175. Thereafter plaintiff remitted $25.50 from the amount of improvements, $135 for improvements made prior to June 19, 1897, and $132.87 from the amount of the taxes. The judgment entered finds the amount due plaintiff less said remissions, the amount due defendant on his former judgment, for the walnut trees, and for use and occupation of the land since the ejectment judgment, which, being offset against the amount due plaintiff, leaves a balance due the latter of $294.11, which, with costs, was made a lien upon the land involved in the suit. A timely motion for a new trial was made, denied, and excepted to. Defendant appeals from the judgment.

For the appellant there were briefs by *Bushnell, Watkins & Moses,* and oral argument by *A. R. Bushnell.*

For the respondent there were briefs by *H. W. Brown* and *Aldro Jenks,* and oral argument by *Mr. Jenks.*

The following opinion was filed January 28, 1902:

BARDEEN, J. There is no certificate that the bill of exceptions contains all the evidence. There is, however, at the close

of the testimony, the following recitation: "Which was all the evidence in the case." In *Erdall v. Atwood,* 79 Wis. 1, and in many subsequent cases, this court held that a statement substantially in the form given is equivalent to a certificate of the trial judge that the bill contained all the evidence. We should so treat it in this case, but for the fact that such statement is impeached and disputed on the face of the bill. It shows that plaintiff offered in evidence tax receipts for six different years, which were marked "Exhibits 1 to 6, inclusive." None of these receipts are found in the bill, nor is any abstract or summary of their contents given. The same is true of certain plans and specifications of the house built by plaintiff, the value of which house he was seeking to recover. The plaintiff offered in evidence the record and files in the estate of Thomas Stewart, deceased, none of which are contained in the bill. These items of evidence are material to some of the questions raised by appellant, and, without their presence in the record, we are unable to ascertain the facts or reach an intelligent conclusion. The recitation that the bill contains all the evidence being disputed by facts appearing on the face thereof, we are compelled to treat the case, as to all questions dependent upon such facts, as though such recitation were false, and to indulge in every legal intendment to support the judgment.

Plaintiff claimed title under certain land contracts from Mary A. (Stewart) Haskins, and a deed executed by her executor under the direction of the county court. The land contracts were in the ordinary form, in which the grantor covenanted to convey title by "a good and sufficient deed" free from all incumbrances except taxes. The deed recites the contract, and that it was made pursuant to a judgment of the county court directing a conveyance according to the terms thereof. The granting clause in the deed purports to convey "all the right, title, and interest of the said Mary A. Haskins, deceased, in and to the said real estate." The defendant

argues that this deed does not give color of title, and therefore plaintiff has not brought himself within the provisions of sec. 3096, Stats. 1898. This statute only allows claims for improvements made by a party in possession while holding adversely by color of title, asserted in good faith, founded on descent or any written instrument. Color of title, as said in *Edgerton v. Bird,* 6 Wis. 527, is "that which in appearance is title, but which in reality is no title," and it was accordingly held that a tax deed which was void on its face was admissible to show color of title in defendant, and bring him within the protection of the statute of limitations. The chief ground of complaint made by defendant is that the deed only purports to convey the right, title, and interest Mrs. Haskins had in the premises. This limits the argument to a mere inspection of the deed itself. Plaintiff's alleged title is based upon his contracts, his deed, and the statute under which it was executed. The statute (sec. 3911) declares the legal effect of a deed executed by an executor pursuant to a contract made by his decedent. It says that "every such conveyance shall be effectual to pass the estate contracted for as fully as if the contracting party himself were still living and then executed the same." The estate contracted to be conveyed was an estate in fee simple. The question is not what was the estate actually conveyed, but rather what was the estate apparently conveyed, in view of the contracts, the deed, and the statute. Mrs. Haskins supposed herself to be the owner of the property in fee simple; at least, that is the plain inference to be drawn from the fact that she contracted to convey it in 1893. She had a solemn adjudication of that fact by a court of record. This distinguishes this case from *Falck v. Marsh,* 88 Wis. 680. In that case the life tenant made a quitclaim deed of his interest to the person who sought to counterclaim for improvements against the claim of the owner of the reversion. This court held that the element of adverse possession was wanting, and denied a recovery. We have no hesi-

tancy in holding that the circumstances here presented are sufficient to sustain the finding of color of title.

The defendant further complains that the court excluded evidence as to the rents and profits which were properly a set-off against plaintiff's recovery. To get this matter properly in mind, it will be necessary to refer somewhat to matters of history shown in this case. Thomas Stewart died in 1882, leaving a will in which he devised the use of his real and personal estate to his widow for life, provided she remain single, with a trust over for the benefit of the parties represented by the defendant. On June 2, 1887, the widow remarried. August 9, 1893, she made her first contract to sell the land to plaintiff, who then went into possession thereunder. Plaintiff's deed was made July 19, 1897. January 10, 1898, defendant brought this action of ejectment, claiming the right to recover possession and for rents and profits. July 23, 1900, judgment was entered in his favor for a recovery of possession, for $999.17 for rents and profits, and $325.11 costs. Under sec. 3082, Stats. 1898, defendant might have recovered for rents and profits of the premises during the time they were withheld by the plaintiff, not exceeding six years prior to the commencement of the action, or from January 10, 1892. The defendant first offered evidence, which was rejected, of the rental value of the land from January 10, 1892, to June 19, 1897, the date when plaintiff secured his deed from Mrs. Haskins' executor. The defendant now claims that the court in the ejectment action only allowed him such rents and profits from the date last mentioned to the date judgment was rendered, and that he should now be permitted to cover the period mentioned in this action, and offset such rents against the plaintiff's recovery. In the first place, it is impossible to tell from the evidence with any degree of certainty for what *period* the court in the ejectment action allowed a recovery for rents and profits. The defendant was entitled to claim

for the six years prior to the commencement of his suit for possession, and, if for any reason the court denied his right to recover for a part of that period, that adjudication is binding upon him until reversed or set aside. *Davis v. Louk,* 30 Wis. 308–312. A more troublesome question arises over the rejection of defendant's offer to prove the rental value of the premises from the date of the widow's second marriage to the time of the commencement of the ejectment suit. Counsel say that the court rejected such evidence on the ground that the widow was in possession of the farm as administratrix of the estate of her first husband, and liable to account for such rents as she received after her remarriage. As before stated, the papers and files in the Stewart estate were put in evidence, but are not preserved in the bill of exceptions. That being the case, every presumption must be made in favor of the ruling of the trial court. We shall therefore presume, in absence of such files, and also of the files in the estate of Mrs. Haskins, which were also introduced and not preserved in the bill, that sufficient would have appeared therefrom to support the ruling of the trial court.

Defendant is further dissatisfied with the ruling of the court below on the question of plaintiff's good faith in making his improvements. He argues against the validity of the "improvement act" with all the vigor and gravity as though it was an open question in this state. We do not so consider it., *Pacquette v. Pickness,* 19 Wis. 219 (decided in 1865), considered the question, and says:

"Similar acts have been in force in many of the states for more than half a century, and have been so uniformly held constitutional that we consider ourselves bound by the great weight of authority in their favor."

That decision has been acquiesced in for more than thirty-five years, and many cases have since been determined, recognizing the conclusion there stated. In this instance we feel entirely at liberty to continue to adhere to the alleged errors

of our predecessors, and without the conviction possessed by counsel that the rule so established is bad law. Carrying the argument further, counsel asserts that plaintiff's improvements were not made in good faith, because most of them were made pending the ejectment action, and because a notice was served upon him about the time he got his deed that the "Superannuated Preachers" claimed the land. We need not repeat what was said in *Zwietusch v. Watkins,* 61 Wis. 615. It was there distinctly held that the commencement of an action of ejectment by the owner of land against a tax-title claimant was not inconsistent with good faith in the continued assertion of title by the latter under his tax deed, although such deed was void in fact. The defendant was therefore held liable for improvements put on the property pending the suit. Mere notice of an adverse claim is not considered, in other states which have statutes of similar general character, to forbid the conclusion that subsequent improvements were made in good faith. *Griswold v. Bragg,* 19 Blatchf. 94; *Harrison v. Castner,* 11 Ohio St. 339; *Whitney v. Richardson,* 31 Vt. 300; *Wells v. Riley,* 2 Dill. 566. Plaintiff had made his contract to purchase and had fulfilled the conditions on his part before any notice was given him. We fully agree with the conclusion reached in the court below that the circumstances in suit do not show bad faith.

After the special verdict had been drawn some question seemed to have arisen whether plaintiff was entitled to improvements made by him while he had the land under contract. The verdict as originally drawn required the jury to find the value of the improvements from the date of his first contract to the, date of the ejectment judgment. As a matter of precaution, a question was added to the verdict asking the jury to separately find the value of the improvements made by the plaintiff from the date of the contract to the date he obtained his deed. The jury found such value to be

$135. Afterwards, to avoid any question as to his right thereto, plaintiff filed a remission of that sum from the total amount found by the jury. In instructing the jury as to their finding upon the added question, the court made use of language which is claimed to have informed the jury of the legal effect of their answer thereto, in defiance of the rule that such action is improper. *Ryan v. Rockford Ins. Co.* 77 Wis. 611; *Coats v. Stanton,* 90 Wis. 130–137; *Kohler v. West Side R. Co.* 99 Wis. 33–39. As we view the case, however, this instruction, conceding the court overstepped legal bounds, becomes innocuous because the plaintiff was entitled to claim for improvements from the date he entered into possession of the premises under his contract. He entered into possession of the land claiming ownership under a written instrument. Where a party takes possession of real estate under a contract of purchase, and in pursuance of its terms, the deed of the vendor, when made, will relate back to the date of the contract. *Schneider v. Botsch,* 90 Ill. 577. In *Sutherland v. Goodnow,* 108 Ill. 528, it is stated, in substance, that when the time of the sale of land becomes material to protect the rights of parties, the conveyance, when executed in consummation of the sale, will have relation back, vest title, and be evidence of an executed sale as of the date of the contract pursuant to which it was executed. The vendee here held possession adversely to all the world except his vendor. He claimed the land pursuant to his written contract, and made his improvements, as he had a perfect right to do. If he carried out his contract, such improvements would redound to his benefit. Having fulfilled his contract and obtained his deed, it relates back to the inception of his contract, and he becomes fully invested with the estate as it then existed, together with all intervening rights. The supreme court of Georgia held that when one bought land in good faith, taking a bond for title from one who represented himself to be the agent of the owner, such bond,

with the signature of the owner thereto, by such person as agent, constituted good color of title, although it was in fact a forgery. *Millen v. Stines,* 81 Ga. 655. See *Garrett v. Adrain,* 44 Ga. 274; *Farley v. Smith,* 39 Ala. 38. A statute of Iowa which was in form that "when an occupant of land has color of title thereto, and in good faith has made any valuable improvements thereon, and is afterwards found not to be the rightful owner," he shall be entitled to pay for such improvements in the manner therein provided, was construed by Judge DILLON in *Litchfield v. Johnson,* 4 Dill. 551. The party entered into possession of land in good faith, and made improvements before he obtained color of title, and the question was whether he was entitled to pay for them, or was limited to such as he had made *after* he had obtained color of title. The court ruled that he was entitled to all improvements made on the theory that the statute was remedial, and entitled to a fair, and even a liberal, construction. The idea at the foundation of our statute, is that if a party has entered into possession of land, and while holding adversely under color of title founded on a written instrument, and has made lasting and beneficial improvements on the land, the real owner shall not have the benefit of such increased value without paying for them. The claimant is not limited to such as he has made himself, but may also recover for such as were made by those under whom he claimed. As an offset thereto, the statute allows the rents and profits received by them, or either of them, to be considered, although the statute of limitations has run thereon. The purpose being to do equity between the parties, we see no reason why the statute should not be construed with fair liberality to that end. We accordingly hold that the deed to plaintiff by relation makes his contract sufficient color of title under the statute, and that the instruction complained of becomes immaterial and harmless. Many other questions are raised and discussed in the briefs. Some are dependent upon the

omitted testimony, and cannot, therefore, be considered. Others are so inconsequential as not to require discussion. They must be considered as resolved against the appellant. Upon the whole record, we discover no legal ground for disturbing the judgment.

*By the Court.*—The judgment is affirmed.

· A motion for rehearing was denied April 1, 1902.