### KISHI et al. v. HUMBLE OIL & REFINING CO. et al.

(Circuit Court of Appeals, Fifth Circuit. March 27, 1924.)

No. 4262.

1. **Courts �köö279—Answer asking affirmative relief gives jurisdiction.**
   Under New Equity rule 30 (198 Fed xxvi, 115 C. C. A, xxvi), an answer praying affirmative relief confers jurisdiction in equity to determine the issues between the parties, though the bill fails to state a cause of action in equity.

2. **Boundaries �köö27—Title to support action to determine boundary.**
   Where the question in issue is the location of the true boundary between land claimed by plaintiff and that claimed by defendant, it is not necessary that plaintiff deraign title from the sovereign, but it is sufficient if his predecessor in title had possession.

�kööFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. Boundaries ⟨⟩37(1)—Evidence held to establish boundary, both by survey and by mutual recognition.

Evidence held to sustain contention of complainant that boundary claimed by him was not only that established by the original survey, but that it·had been recognized by owners of the adjacent lands for many years.

Appeals from the District Court of the United States for the Eastern District of Texas; W. Lee Estes, Judge.

Suit in equity by K. Kishi and others against the Humble Oil & Refining Company and others. Decree dismissing bill, and both parties appeal. Reversed.

George E. Holland, of Orange, Tex., W. O. Huggins, of Houston, Tex., and W. D. Gordon, of Beaumont, Tex., for appellants and cross-appellees.

Robert L. Batts, of Austin, Tex., L. A. Carlton, of Houston, Tex., John M. Conley, of Beaumont, Tex., and Jack Dies and John E. Green, Jr., both of Houston, Tex. (E. E. Townes and G. P. Dougherty, both of Houston, Tex., on the brief), for appellees and cross-appellants.

Before WALKER and BRYAN, Circuit Judges, and CALL, District Judge.

CALL, District Judge. This cause comes on for hearing upon the appeal of K. Kishi and I. Lang from the decree of the District Court for the Eastern District of Texas, dismissing the bill of complaint of K. Kishi; also the cross-appeal of the defendants, Oscar Chesson and the Humble Oil & Refining Company, and the appeal of Coon and Japhet, interveners in the case.

The history of the case may be shortly stated as follows: K. Kishi filed his bill of complaint against Oscar Chesson, the Humble Oil & Refining Company, and I. Lang, claiming the ownership of 10⅔ acres of land in the southeast corner of the James Dyson league. The defendants claim the land in dispute is a part of the William Dyson league. It is admitted by all parties that the south line of the James Dyson league is the north line of the William Dyson league. The dispute arises over the location of the dividing line. The Gulf Production Company intervened, claiming under an oil lease from K. Kishi and I. Lang. Japhet and Coon intervened, claiming a certain interest in the oil produced, or to be produced, under the lease to the Gulf Production Company. Isaac Lang intervened, claiming one-fourth interest in the mineral and oils on said land.

The complainant below in his bill charges that he is the owner of the land in controversy, holding under a chain of title from the state, and the owner of three-fourths of the oils and minerals on said land, and that Lang is the owner of the other one-fourth of said minerals and oils; that according to the true dividing line between the James Dyson and the William Dyson leagues, and the true location thereof, the land is a part of the James Dyson league; that Oscar Chesson is the owner, and in possession, of a tract of land in the William Dyson league, lying immediately south of the land in controversy, and extending to the north line of the William Dyson league, the common boundary line be-

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

tween the two leagues. The bill then deraigns the Chesson title through certain grantors. It then proceeds to state that the defendant the Humble Oil & Refining Company, the lessee of Chesson, denies him the right to go upon the land and exercise control over same, and they are exercising exclusive possession of same and converting the same to their own use and benefit, and that the lease is a cloud upon his title to the lands and greatly impairs the value of same. The bill then prays substantially to cancel the lease as a cloud upon the title; that the true dividing line between the two Dyson leagues be established by order of the court as claimed in the bill; for injunction against the defendants, enjoining them from removing oil, etc., from said lands, an accounting of all oil already removed; and also praying for a receiver.

This bill was filed January 4, 1922. On January 5, 1922, the Gulf Production Company filed its intervention, claiming a right to the oil on the land in controversy under lease from Kishi and Lang, and praying that its rights be protected. Thereafter, on January 16, 1922, Dan A. Japhet and R. S. Coon intervened, claiming an interest in any oil or minerals on the land under a contract with the Gulf Production Company. On April 3d Isaac Lang filed his intervention, praying that his rights be protected. Answer was filed to the bill of complaint by Chesson, and the Humble Oil & Refining Company virtually adopted his answer in its pleading. In and by this answer Chesson denies that the land in controversy is a part of the James Dyson league; denies that Kishi owns the land, has a fee-simple title to same, or has ever been in possession of same, but claims to be the owner and alleges possession for more than 10 years; alleges that the true dividing line between the two leagues is 80 varas to the north of the line claimed by complainant; that this line, 80 varas north of the line claimed by complainant, has long prior to the bringing of this suit been known and recognized as the true dividing line. Denial is also made that the line claimed by complainant was located on the ground and recognized as the true dividing line, and that the land owned by him extended only to and stopped at said claimed line; further, that there was no course of dealing with said line, and no purchases and recognition of the same as the true line by him or his predecessors in title. He then alleges that for 30 or 40 years the owners of lands respectively north and south of the line dividing the two grants have made sales and recognized the line 80 varas north of the line claimed by the complainant.

Chesson then sets up the suit of Hollis v. Walker covering lands some three miles west of the location of the land in controversy, in which suit the line 80 varas north of the line claimed by the complainant was established as the south line of the James Dyson league as to the lands in controversy in said suit, and that an extension of such line to Cow Bayou is the line claimed by the defendant. He then alleges in his answer that it was agreed by the owners of lands on the respective sides of the dividing line that the line established by the suit should fix the line between the two leagues, and that Kishi has at all times since the determination of said cause recognized the line to be where the defendant now claims it to be, and that Lang did likewise; that for more than 10 years before the bringing of this suit he has held peaceable and ad-

verse possession of the land in controversy, and therefore the complainant's action is barred by the statute of limitations. The answer concludes with a prayer for affirmative relief; i. e., for a decree fixing the true dividing line between the two leagues as contended for by the defendant, and for the removal of the claim of complainant as a cloud upon defendant's title.

This answer is made applicable to the interventions of the Gulf Production Company, Isaac Lang, and Japhet and Coon. The Gulf Production Company filed an amended petition, in which it prays for affirmative relief. There were other pleadings filed, but it is not necessary to consider them in deciding the case here.

The issues made by the bill of complaint and answers may be stated as follows: (1) Has complainant shown fee simple title in himself to the land in controversy? (2) Was the line claimed by the complainant as the correct dividing line between the two leagues established by the surveyors segregating the two leagues from the public domain? (3) If not so established by those surveyors, had it been by agreement of contiguous owners so established as the correct line? (4) Has the complainant by his acts agreed to the correctness of the line established by the suit of Hollis v. Walker, decided by the appellate court in 1910? (5) Has Chesson acquired title by the statute of limitations?

[1] At the outset we may say that we deem it very doubtful whether the bill could be maintained in equity, had it not been for the affirmative relief sought in the answers of defendants, who were in possession of the land in controversy. An answer seeking affirmative relief by the new equity rules occupies the position of a cross-bill under the old practice, and the cross-bills by the defendants in our judgment vested the court with jurisdiction to determine the issues between the parties.

The case was tried by the court, and after considering the testimony and argument of counsel a decree was entered dismissing the bill, denying the prayers of the interveners, and fixing the true dividing line between the two leagues at a point 80 varas north of the line contended for by the complainant. The line claimed by the defendants and established by the decree is marked upon the maps filed in evidence in red; the line claimed by the complainant is in black. These lines are referred to in the briefs according to the color to designate which is meant.

[2] It was strenuously urged, in argument and the briefs, that Kishi had failed to make proof of ownership of the land. The issue on this point, as we understand the pleadings, is not as to the title of Kishi to the portion of James Dyson league as claimed by him as the basis of his claim to the land in dispute, but the defendants contend that he does not own it, because the land is not in the James Dyson league. Under that issue it was not necessary for him to deraign his title from the sovereign, as insisted by the defendants. There is ample evidence to show conveyance to Kishi by one in possession of the portion of the James Dyson league, claimed by him in his bill of complaint, and, if the land in controversy is a part of the James Dyson league, to the land described in the bill.

[3] We have considered the evidence contained in the record carefully, and have reached the conclusion that from that evidence it appears that the line of division claimed by the complainant marked on the maps

in black is the line marked by the surveyors who segregated the two leagues from the public domain in 1835; but, in the event we are wrong in this conclusion, there is no doubt in our minds that the contiguous owners of the property on each side of the division line recognized this as the true dividing line between the two leagues, had their property surveyed according to it, and in making subdivisions used it as the true line, at least as to the eastern portion of the two leagues, from 1873. The defendant Chesson and his predecessor in title certainly recognized and adopted this as the true dividing line up to and until the suit of Hollis v. Walker, in 1908, and this suit was concerned with lands some 3 miles west of the land here in dispute. While that decision is decisive as to the lands therein concerned, it can have no controlling effect upon the controversy in this case, except and unless the result has been accepted by the owners of the lands abutting on this line, either by agreement or acquiescence for the statutory period.

It seems that the court below took the view that the complainant had done this, and it was for that reason that the decree was rendered against him. As to Lang, some stress was laid upon the fact that Lang had not testified in the case; but the absence of Lang was sufficiently accounted for. Then a lease executed by Lang, to which a plat was subsequently attached, was viewed as an adoption of the red line. We think the evidence does not support the conclusion that Lang ever knew of the plat, or the claim that the red line was the southern boundary of the property in which he had retained the mineral rights.

A careful review of the evidence convinces us that it fails utterly to support the contention that Kishi accepted and recognized the red line as the southern boundary of his lands after the Hollis-Walker suit. The fact that, in making leases to certain mineral rights, the right given used the red line as a boundary does not have the effect of showing acceptance and recognition of said line. It was the course a reasonably prudent man would have pursued in order to save himself from danger of a suit for failure of the title conveyed in the lease. Nor does the fact that he recovered on the warranty of Walker for the land lost in the suit of Hollis v. Walker and the subsequent suits show acceptance and recognition. His title had failed to those lands, and the warranty had been breached. Nor is any agreement actually entered into by Kishi shown. All of Kishi's acts since the decision in 1910 of Hollis-Walker Case are readily explained as the acts of a law-abiding, reasonably careful, and prudent man. The construction of the acts of Kishi into acceptance and recognition and adoption of the red line as the true dividing line between the two leagues is not supported by the evidence in this case. Even though the testimony had shown acquiescence by Kishi for 9 years, if such acquiescence was induced by mistake, it would not deprive the complainant of his property.

This leaves the question in the main appeal: Had Chesson acquired title to the land by the statute of limitations? The trial judge apparently decided this question against Chesson, and we think correctly. Some of the witnesses testified that Chesson built a fence on the red line in 1908 and 1909, yet these witnesses are shown to have been mistaken in the time by the circumstances in evidence. From all the evidence we are

convinced that it was some time as late as 1913 before any fence was built along the red line by Chesson, and this suit was commenced in January, 1922, so that it is apparent that the 10 years' adverse possession had not run at the bringing of the suit, and it would be necessary to show 10 years' possession adverse to the owner in order to divest him of title. Nor are we satisfied that the fence after being built was maintained so as to constitute adverse possession.

We do not understand that there is any question of estoppel in the case claimed as shown by the testimony. This disposes of the main appeal by the complainant and Lang, and the cross-appeal of the defendants Chesson and the Humble Oil & Refining Company.

There remains the appeal of Japhet and Coon, interveners, whose interests depend upon the recovery by the complainant. As this case must go back to the District Court for further proceedings, and since the interests of Japhet and Coon have not been considered by that court, except a denial of the petition based upon the decree entered, the District Court will make the proper decree therein upon the further decree in the case, establishing the black line on the maps as the true dividing line between the two leagues.

For the reasons above stated, the decree entered herein by the District Court is reversed.