THE GULF PRODUCTION COMPANY V. MOSE GRANGER ET AL.

No. 5890. Decided December 22, 1932.

(55 S. W., 2d Series, 531.)
(57 S. W., 2d Series, 1116.)

*D. Edward Greer, John E. Green, Jr., John Broughton* and *Claude McCaleb,* all of Houston, and *Peveril O. Settle,* of Fort Worth, and *Ben H. Powell,* of Austin, for appellant.

The Gulf and its lessors could not prevail, within the meaning of the contract sued upon, if they settled or compromised with their adversaries in the suit of Kishi v. Humble Oil & Refining Company, and the court erred in finding to the contrary and rendering judgment thereon against the appellant. Turner v. Montgomery, 293 S. W., 815; Barber v. Herring, 229 S. W., 472; Bryant v. Continental Cas. Co., 107 Texas, 582, 182 S. W., 674.

*John B. Warren* and *Fowler & Conn,* all of Houston, and *Ocie Speer,* of Austin, for appellees.

There is ample evidence in the record to sustain the court's conclusion that all things had happened which entitled the appellees under the contract sued upon to the delivery of or payment for their part of the oil produced on the land involved in said suit from January 19, 1922. Heirs of Watrous v. McKie, 54 Texas, 65; West v. Herman, 47 Texas Civ. App., 131, 104 S. W., 431; Morrison v. Hazzard, 99 Texas, 583; Reagan v. Bruff, 49 Texas Civ. App., 226, 108 S. W., 185; Conn v. Rosamond, 161 S. W., 73; Moran v. Prather, 23 Wall., 499, 23 L. Ed., 121.

The court did not err in overruling the defendant's motion to require Fowler & Conn to show their authority to represent Sarah Jane Granger, because filed after intervenors had announced ready for trial. Slayden & Co. v. Palmo, 90 S. W., 908; id., 100 Texas, 13, 92 S. W., 796; Williams v. Planters & M. Natl. Bank, 91 Texas, 651, 45 S. W., 690; Bridges v. Samuelson, 73 Texas, 522, 11 S. W., 539.

MR. JUDGE LEDDY delivered the opinion for the Commission of Appeals, Section B.

The Honorable Court of Civil Appeals for the First Supreme Judicial District certifies for the determination of the Supreme Court two questions of law arising in the above cause. The statement accompanying the questions submitted is very voluminous, covering some 21 typewritten pages. We do not

deem it necessary to set forth the statement in full, but will state so much thereof as we deem essential in answering the questions certified.

The James Dyson league is situated in Orange County, Texas. The William Dyson league lies immediately south of the James Dyson, and its north boundary line is the south boundary line of the James Dyson.

K. Kishi and Isaac Lang claimed to be the owners of two hundred acres of land along the south boundary of the James Dyson league, and on December 23, 1919, leased to the Gulf Production Company 175 acres of said land lying on the south boundary line of the James Dyson league, this lease being known as lease "A." These same parties leased to the Gulf Production Company and Dan Japhet 20 acres of land immediately east of the 175 acre tract on the south boundary line of the James Dyson league on March 12, 1920, and subsequently Japhet assigned his interest in this lease to the Gulf Production Company. This was known as lease "B."

Oscar Chesson claimed ownership to the lands lying along the north boundary line of the William Dyson league and leased a portion thereof on February 18, 1920. This lease by mesne conveyances subsequently passed to the Humble Oil & Refining Company. Subsequent to the execution of this lease a controversy arose between the Gulf Production Company and its lessors and the Humble Oil & Refining Company and its lessor as to the true location of the boundary line between the William Dyson and the James Dyson leagues. The Gulf and its lessors claimed that the true location of this line was 80 varas south of where the Humble and its lessors claimed said line to be located. The disputed strip involved 10-2/3 acres of land.

K. Kishi filed suit in the Federal court at Beaumont against the Humble and its lessors to recover the 10-2/3 acres of land. Oscar Chesson and the Humble Company answered this petition. The Gulf Production Company and Isaac Lang intervened in this suit.

The only issue involved in this case was the claim by the Gulf and its lessors on one side and Oscar Chesson and the Humble Oil & Refining Company on the other as to whether the 10-2/3 acres was in the William or James Dyson league. If the land was in the James Dyson league, Kishi and Lang and the Gulf Production Company were entitled to all the oil to be produced therefrom, but if it was situated in the William Dyson

league, then Oscar Chesson and the Humble Company were entitled to such oil.

The Granger heirs claimed a one-half interest in the lands described in the Gulf Production "A" and "B" leases, including the 10-2/3 acres as against both oil companies and their lessors. These heirs filed suit against the Humble and the Gulf and their lessors in the State District Court at Orange, Texas, to recover the same, this suit being styled Mose Granger et al. v. Gulf Production Company et al., No. 4397, in the District Court, Orange County, Texas.

While the two suits were pending on January 12, 1922, Warren and the Granger heirs settled their suit pending in the district court of Orange County with the Humble Oil & Refining Company for a cash consideration and with the Humble's agreement to pay them 2% of all the oil produced after that date from the 10-2/3 acres whether recovered by it in the Federal court suit by compromise or otherwise. Upon the payment of the cash consideration specified in this agreement on January 13, 1922, Warren, individually, and as attorney for the Granger heirs, conveyed all their right, title and interest to the 10-2/3 acres of land to the Humble Oil & Refining Company.

On January 19, 1922, Warren and his clients settled the Orange County suit with the Gulf and its lessors, and an agreed judgment was rendered in favor of the Gulf Production Company and its lessors, Kishi and Lang, for all the lands covered by leases "A" and "B," including the 10-2/3 acres of land which Warren and his clients had theretofore conveyed to the Humble Oil & Refining Company. Judgment was entered that the Granger heirs take nothing by reason of their suit against the Gulf Production Company and Kishi and Lang as to any portion of the land sued for.

In order to obtain this settlement the Gulf Company paid Warren and his clients a cash consideration of $10,000, and a further consideration represented in the stipulations of a contract between Warren and the Granger heirs as first parties, the Gulf Production Company as second party, and its lessors, Kishi and Lang, as third parties, whereby the Gulf Production Company and its lessors agreed to pay Warren et al, 1/96 of all the oil produced after January 19, 1922, from the lands covered by leases "A" and "B," except the 10-2/3 acres. With reference to the 10-2/3 acres the contract provides:

"As to the 10-2/3 acres in dispute between Kishi, Lang, Gulf Production Company, Humble Oil & Refining Company, Oscar Chesson and others and described in the suit of K. Kishi v.

Oscar Chesson and others, in Equity at the Federal Court at Beaumont, in the event second and third parties prevail in said suit against Humble Oil & Refining Company and Chesson, first party shall receive 1/40th of all oil produced and saved from said 10-2/3 acres of land, of which Gulf Production Company shall pay one-half or 1/80th and Kishi and Lang the remaining one-half or 1/80th in the respective portions as owned by them, to wit: Kishi three-fourths of said 1/80th and Lang one-fourth of said 1/80th, and said payment to be made in the same manner as provided hereinbefore.

"In the event the suit of Kishi v. Humble Oil & Refining Company et al., involving said strip is settled or compromised, then no payments are to be made to first party as to said strip."

On February 15, 1922, the Gulf Production Company and the Humble Oil & Refining Company, but not their lessors, settled and compromised the Federal court suit. By the terms of this compromise agreement the Humble received 80% and the Gulf 20% of all oil produced from the 10-2/3 acres prior to February 1, 1922, and it was provided that thereafter the Humble would receive 75% and the Gulf 25% of all oil produced from said 10-2/3 acres.

After this settlement between the Gulf and Humble Companies the suit of K. Kishi against Humble Oil & Refining Company was tried in the Federal court at Beaumont and judgment rendered on May 25, 1923. By this judgment it was determined that the 10-2/3 acre tract in controversy was located in the William Dyson survey and the Humble's lessor recovered the same. Upon this trial the compromise between the Humble and Gulf Companies on February 1, 1922, was introduced into evidence and the decree filed in Federal court on May 25, 1923, provides:

"It is decreed that the Gulf Production Company is entitled to no relief against the defendants Oscar Chesson and the Humble Oil & Refining Company in virtue of its pleadings herein. Their respective rights having been fixed by an agreement, an adjudication concerning which as between them has not been asked, nor is same necessary."

Appeal was perfected from this decree to the Circuit Court of Appeals at New Orleans, and upon hearing that court reversed the judgment of the trial court insofar as it decreed that the 10-2/3 acre tract was located in the William Dyson league and held that the same was located in the James Dyson league and that the Gulf's lessors were the owners of the land subject to the mineral lease held by the Gulf. (298 Fed., 218). This

judgment recognized the compromise agreement made between the Gulf and Humble and their rights as so adjusted were not disturbed by the judgment. When the mandate was returned it was decreed by the United States District Court at Beaumont that the 10-2/3 acre tract was in the James Dyson league, and Kishi's and Lang's title and the Gulf's mineral lease were established, but in said judgment it was decreed that the Humble and Gulf should recover the oil produced therefrom according to the terms of their compromise agreement.

The first question certified is predicated upon the foregoing facts and is as follows:

"Was the agreement between the appellant and the Humble Oil Company such a settlement or compromise of the suit of Kishi et al. and the Humble Company as relieved appellant of any liability to appellee under the contract upon which this suit is based?"

A correct answer to this question turns upon a proper construction of the following provision of the contract made between the parties to this suit:

"In the event the suit of Kishi v. Humble Oil & Refining Company et al., involving said strip is settled or compromised, then no payments are to be made to first party as to such strip."

The suit referred to involved but one issue, and that was whether the land in dispute was located in the James of William Dyson league. If it were located in the James Dyson league, then Kishi and Lang owned the fee title to same, burdened with the mineral lease held by the Gulf Production Company. If said land were located in the William Dyson league, the plaintiffs in that suit owned no interest in the land, but the fee title was owned by Oscar Chesson subject to the mineral lease held by the Humble Oil & Refining Company.

■ When these parties agreed that no royalty payments were to be made to the Granger heirs in the event the Kishi suit was settled or compromised, it was the evident intention of the parties that the compromise or settlement was to be of such a nature as would finally decide the rights of all parties and therefore completely terminate the suit. It is clear that the compromise of the controversy between the Gulf and Humble Companies was not such a settlement. This compromise did not determine, in a way binding upon all parties to the suit, the issue as to whether this land was located in the James Dyson or William Dyson league. The settlement left between the remaining parties this issue as to title to the strip of land involved to be decided upon a trial, and it was in fact so de-

cided. The settlement made by the Gulf and Humble Companies did not have even the effect of completely adjusting their own interest in the suit, as such settlement did not and could not determine to whom the royalties accruing under their respective leases should be paid. The lessors of these companies were not parties to their agreement, and hence such settlement left wholly undecided the question as to who was entitled to receive the royalties from the oil produced from the land in controversy.

Again, the very language of the contract plainly imports a purpose that the settlement or compromise the parties had in mind was a settlement of the *suit* "involving said strip." Such a settlement could only be one that foreclosed all claims of title and interest in the land in controversy as shown by the pleadings of the respective parties. When these questions were set at rest, and not until then, was the Kishi suit settled.

It would present a rather anomalous situation if we should hold that the compromise agreement between the Gulf and Humble was a settlement and compromise of the Kishi suit within the meaning of the contract, when such suit was subsequently tried and the issues involved therein decided by the Federal court. It was not until this judgment was rendered after a trial that the issues involved in the Kishi suit were fully and finally determined in such a way as to bind all parties to the suit. The United States District Court decided that the land was located in the William Dyson league and that therefore Oscar Chesson was the owner of the fee to the land, burdened with the mineral lease of the Humble Oil & Refining Company. Upon appeal this judgment was reversed, the Circuit Court of Appeals holding that the 10-2/3 acres were situated in the James Dyson league and Kishi and Lang were decreed to be the owners of the fee and the mineral rights of the Gulf Production Company under its lease were established. This judgment expressly recognized the compromise agreement between the Gulf and Humble Companies and did not attempt in any way to modify their rights thereunder.

There is no language in the contract which is reasonably and fairly susceptible of the interpretation that if one of the parties to the Kishi suit should compromise or adjust his rights with another party to the suit the royalties due thereunder should not be payable. The Gulf Company and Kishi and Lang are by the express terms of the contract to be relieved from payment of the specific royalty only in the event the Kishi *suit* is settled or compromised. The suit necessarily involved all of

the parties thereto and their legal rights as shown and reflected by their respective pleadings. Until such a settlement or compromise was made as could be effectively pleaded in bar to the issues there asserted, the suit was not settled, or compromised so as to relieve the appellant of liability under its contract.

From what has been said it follows that question number one should be answered in the negative.

The second question certified is as follows:

"Upon the facts stated, was appellant wrongfully denied its legal right to interplead all of the parties interested in the subject matter of the suit and have the rights of all such parties against it adjudicated and settled in this suit?"

It seems that all of the beneficiaries under the contract sued on who had not assigned their interest to John B. Warren and J. A. Conn were parties plaintiff in this case except Mose Granger, Mary Scales, and Millie Caron. More than a year before the trial of the case the latter named parties had, through their attorneys, filed a formal disclaimer.

A proper answer to the second question certified is therefore dependent upon whether the intervening plaintiffs represented by Messrs. Fowler and Conn were actual parties to this suit. They were such parties unless these lawyers were without authority to file the intervening petition for Sarah Jane Granger, individually, and as guardian of Tresimond, John, Sarah, Eleanor, Mary and Violet Granger, minors.

Appellant duly filed its motion to require Fowler and Conn to show their authority to represent the above named parties. The action of the court on this motion is shown by the following recital in the final judgment rendered in this case:

"On this, the 23rd day of November, A. D. 1927, came on to be heard the above styled and numbered cause and then came the plaintiffs and intervenors and announced ready for trial, then came the defendant, and presented a motion to require of John B. Warren and Fowler and Conn, attorneys, to show authority for instituting this suit in behalf of Sarah Jane Granger and Ada Granger, and the court having heard said motion and the *evidence submitted thereon,* overruled the same, to which defendant excepted.

It appears from the certificate of the Court of Civil Appeals that the bill of exception taken to the ruling of the court sets out in full the affidavits of Sarah Jane Granger and Ada Granger and the correspondence and pleadings in the Orange County suit, which, if true, show that Fowler and Conn were

not authorized to file the petition in intervention in this suit for Sarah Jane Granger and Ada Granger, and their minor children. The bill of exception does not contain any evidence showing that Warren or Fowler and Conn had any authority to represent the parties mentioned as attorneys in this suit, nor does the bill recite that *the evidence set out therein was all of the evidence heard by the court on the motion.*

The judgment of the court overruling appellant's motion to require Fowler and Conn to show that they were authorized to represent the intervening plaintiffs specifically recites that the court heard evidence thereon. In the absence of an affirmative showing in the record to the contrary it must be presumed that the evidence heard on this motion was sufficient to sustain the ruling made by the court.

To overcome this presumption appellant relies upon its bill of exception reserved to the action of the court in overruling its motion in which is set forth that in support of its motion it offered certain evidence tending to show that Fowler and Conn were not authorized to represent the intervening plaintiffs. The Court of Civil Appeals in its original opinion in this case held that the bill of exception was insufficient to overcome the presumption arising from the recital in the court's judgment for the reason that it is not shown in such bill that the evidence therein set forth constituted all of the evidence offered and considered by the court on the hearing of said motion. We think this holding is a correct one. If appellant desired to urge the question that there was no testimony presented to the court showing that Fowler and Conn had any authority to represent the intervening plaintiffs, except that set forth in the bill, it should have been so recited therein. In the state of the record we may assume that all of the evidence set forth in the bill of exception negativing the authority of Fowler and Conn to represent the intervening plaintiffs was offered before the court; yet for aught that appears in the bill other testimony tending to show that said attorneys were authorized to represent such plaintiffs may have been heard, considered, and accepted by the court. The recital in the bill that appellant offered certain evidence *to sustain its motion does not negative* the fact that other evidence sustaining the authority of the attorneys to represent the intervening plaintiffs was offered and considered by the court. In this state of the record it must be presumed that the evidence which the judgment of the trial court recites was heard was sufficient to justify a finding that

Fowler and Conn were authorized to represent the intervening plaintiffs.

It is a universal rule that "where the determination of a question for review depends on evidence, and the record on appeal does not show or purport to show all the evidence pertaining to it in the manner required by the practice in the particular jurisdiction, it will be presumed that the evidence was sufficient to sustain the ruling or action of the court." 4 C. J., p. 735, Sec. 2665; Slayden v. Palmo, 90 S. W., 908, 100 Texas, 13, 92 S. W., 796; Williams v. Planters & M. Natl. Bank, 91 Texas, 651, 45 S. W., 690; Allen v. Henn, 197 Ill., 486, 64 N. E., 250; Hoge v. Herzberg, 141 Ala., 439, 37 So., 591; State v. Shepphard, 23 Mont., 323, 58 Pac., 868; Maher et al. v. Shenhall et al., 96 Ia., 634, 65 N. W., 978; Spriesterbach v. Schmidt, 64 Minn., 211, 66 N. W., 721; O'Malley v. Heman Const Co., 255 Mo., 386; City of St. Joseph v. Pitt, 109 Mo. App., 635, 83 S. W., 544; McNutt v. Roberts et al. (Tenn.), 48 S. W., 300; Dorer v. Hood, 113 Wis., 607, 88 N. W., 1009; Smith v. Pence & Pier, 33 S. D., 516, 146 N. W., 709.

We therefore answer that appellant was not wrongfully denied its legal right to interplead all of the parties interested in the subject matter of the suit, as all such parties were properly before the court.

We recommend that the questions certified be answered as indicated herein.

The opinion of the Commission of Appeals, answering the certified questions, is adopted and ordered certified.

C. M. CURETON, Chief Justice.

ON REHEARING.

It is strenuously insisted in appellant's motion for rehearing that the Gulf Production Company and its lessor did not prevail against the Humble Company and its lessor within the meaning of the contract, and that this court should so hold.

It is not within the province of this court to determine such question, as the same was not submitted for our consideration in the certificate presented by the Honorable Court of Civil Appeals. The only question submitted to us in the certificate concerning the construction of the contract in question was whether the Kishi suit was settled or compromised so as to relieve appellant of liability under its contract. Whether appellant was in fact liable under another provision of the contract was not considered by us and we expressed no opinion thereon.

We have carefully considered the argument presented in the motion, but have not been convinced that the questions submitted were incorrectly answered in our original opinion.

We recommend that appellant's motion for rehearing be overruled.